XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
AMIE L. MEDLEY
Deputy Attorney General
State Bar No. 266586
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013
 Telephone: (213) 269-6226
 Fax: (213) 897-5775
 E-mail: Amie.Medley@doj.ca.gov
*Attorneys for Defendant Xavier Becerra*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DON HIGGINSON,**<br><br>                             Plaintiff,<br><br>    v.<br><br>**XAVIER BECERRA, in his official capacity as ATTORNEY GENERAL OF CALIFORNIA; and CITY OF POWAY, CALIFORNIA,**<br><br>                            Defendants. | 3:17-CV-2032 WQHJLB<br><br>**DEFENDANT XAVIER BECERRA'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Judge:    The Honorable William Q. Hayes<br>Date:     December 26, 2017<br><br>**No Oral Argument Unless Requested by the Court** |

# INTRODUCTION

Plaintiff's complaint should be dismissed for two reasons: first, he lacks standing to maintain his Fourteenth Amendment challenge to the California Voting Rights Act (CVRA) and second, he has failed to allege sufficient facts to state a claim.

First and foremost, Plaintiff has not sufficiently alleged that he has suffered a cognizable injury under the Fourteenth Amendment, which is enough to end the standing analysis. But Plaintiff has also failed to satisfy the remaining two elements required for standing as well.

Even if Plaintiff had sufficiently alleged standing, he has failed to state a claim under the Fourteenth Amendment for several reasons. First, *Shaw v. Reno*, 509 U.S. 630 (1993) (*Shaw I*) and the resulting line of cases on which Plaintiff relies are not applicable here. Those cases involved challenges to district maps or boundaries rather than changes in electoral systems and are ill-fitted for application to a political subdivision's decision to switch from one type of election to another. Second, the CVRA is a race neutral statute that does not trigger strict scrutiny and that easily withstands rational basis review. Third, the CVRA is a separate and independent statute from § 2 of the Federal Voting Rights Act (FVRA) and is entitled to an independent analysis of its validity under the Fourteenth Amendment. Finally, Plaintiff has not alleged that the CVRA is unconstitutional in all its applications.

For all of these reasons, Defendant Xavier Becerra, California Attorney General (the "Attorney General") asks the Court to grant his motion to dismiss the complaint in its entirety without leave to amend.

# ARGUMENT

## I. PLAINTIFF LACKS STANDING TO BRING HIS CVRA CHALLENGE

Plaintiff has not met his burden to establish Article III standing in this case. He has failed to satisfy the first element of the standing analysis by showing that he

has suffered any cognizable injury. The Court's inquiry can and should end there. But Plaintiff has also failed to satisfy the causation and redressability prongs of the standing analysis.

Plaintiff's claims fall squarely into the territory of *U.S. v. Hays*, 515 U.S. 737 (1995) and *Sinkfield v. Kelley*, 531 U.S. 28 (2000). Those cases require that to establish standing, a plaintiff in a redistricting case must demonstrate that he or she either lives in a racially gerrymandered district or has personally been subjected to a racial classification. *Sinkfield*, 531 U.S. at 30; *Hays*, 515 U.S. at 745. Plaintiff's allegation that his district has been racially gerrymandered is conclusory and insufficient to establish injury. Compl. at ¶ 10 ("Mr. Higginson alleges that District 2, like all of the City's districts, is racially gerrymandered as a result of the redistricting the [CVRA] has imposed on the City.") And, contrary to his insistence, Plaintiff has not alleged that he personally was subjected to a racial classification—specifically, he has not alleged that he was placed in one voting district rather than another because of his race. Instead, as Plaintiff explains in his opposition, his allegation is that the decision to change from at-large elections to by-district elections was made to comply with the CVRA, leading him to conclude that the CVRA makes "race the predominant factor in creating his district." Opp. at 14. But being personally subjected to a racial classification is not the same thing as ending up in one voting district versus another due to a change in electoral systems.

Plaintiff attempts to distinguish *Hays* and *Sinkfield* by arguing that "Higginson does not rely on harms that voters in *other districts* have suffered." Opp. at 14. While that is true of *Hays*, it is not of *Sinkfield*—the plaintiffs in *Sinkfield* were "challenging their own districts as the products of unconstitutional racial gerrymandering." *Sinkfield*, 531 U.S. at 29. The Supreme Court found that the *Sinkfield* plaintiffs' position was "essentially indistinguishable from that of the appellees in *Hays*." *Id.* at 30. The *Sinkfield* plaintiffs were challenging their own districts "under a redistricting plan whose purpose was the creation of majority-

3

minority districts, some of which border appellees' districts." *Id*. The plaintiffs argued "that an unconstitutional use of race in drawing the boundaries of majority-minority districts necessarily involves an unconstitutional use of race in drawing the boundaries of neighboring majority-white districts" in which they themselves lived. *Id*. at 30-31. The Supreme Court rejected that argument, as it did in *Hays*, holding that "evidence sufficient to support a *Shaw* claim with respect to a majority-minority district did 'not prove anything' with respect to a neighboring majority-white district in which the appellees resided." *Id*. at 31 (quoting *Hays*, 515 U.S. at 746). The Court also held that such a claim "does not allege a cognizable injury under the Fourteenth Amendment." *Id*. Similarly, in this case, Plaintiff asks the Court to permit him to challenge the CVRA despite the fact that he has not alleged a *Shaw*-type injury as a result of being placed in one district instead of another based on his race. The Court should decline this invitation.

      Plaintiff argues that the Attorney General's standing arguments conflate standing with the merits, but this is not the case. The complaint includes no factual allegations that support standing in this case; only the conclusory allegation that racial gerrymandering has occurred. This Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). But that is precisely what Plaintiff is asking the Court to do by insisting that it assume he will be successful on the merits of his claim despite the lack of factual allegations that would support his use of the racial gerrymandering label. Opp. at 13-14.

      Plaintiff has also failed to satisfy the elements of causation and redressability. The CVRA only requires political subdivisions to stop using at-large elections where racially polarized voting has occurred. Plaintiff's complaint does not include any allegations that racially polarized voting has or has not occurred in the City of Poway. Plaintiff points to the City's supposed belief that it was violating the

4

CVRA and thus was required to abandon its at-large election system. Opp. at 16. However, the allegations in the complaint do not express that belief. To the contrary, the Complaint includes statements by various individuals that indicate they did not believe the City was violating the statute, but the costs of litigation—attorneys' fees or no—convinced them to move to by-district elections. Compl. at ¶ 45 ("I feel like we're already being found guilty of something and we don't have a change to prove our innocence."); ¶ 46 ("[T]his council does a remarkable job with [at-large elections] . . . it's [taxpayer] money we'd be putting at risk [with litigation] and none of us are willing to do that.").

The allegations in the complaint also assert that a letter from a private attorney was the catalyst for the City's decision to move from at-large elections to by-district elections, not any action by the Attorney General.[1] As Plaintiff acknowledges in his opposition, to plead causation, he must "plausibly allege that his injury is 'fairly traceable to the challenged action of the defendant[s], and not the result of the independent action of some third party not before the court.'" Opp. at 15 (citing *Bennett v. Spear*, 520 U.S. 154, 167 (1997)). He has not done so here. The Attorney General's generalized power to enforce California's laws is not sufficient to establish causation for standing purposes. *See Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) ("The lack of threatened enforcement by the Attorney General also means that the 'case or controversy' requirement of Article III is not satisfied . . . the search of plaintiffs' premises were not the result of any action attributable or traceable to the Attorney General."). And because the Plaintiff's alleged injury did not result from any action by the Attorney General or from any other action alleged in the complaint, Plaintiff has not alleged a claim that would be redressable by an injunction or other judgment by this Court.

---

[1] Plaintiff devotes two pages of his opposition to the actions of private attorneys in threatening action against political subdivisions under the CVRA. But these allegations are not relevant to Plaintiff's facial challenge to the validity of the CVRA.

## II. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if he could establish standing to challenge the CVRA, Plaintiff has not alleged a Fourteenth Amendment claim entitling him to relief. None of the arguments made in his opposition overcome the fatally deficient allegations of his complaint.

*First*, Plaintiff asks this court to apply the *Shaw I* line of cases in a context different than that in which it was developed and has always been applied. *See Shaw I*, 509 U.S. 630. The Court should decline to do so because these cases are ill-fitted for deciding the case at hand. *Shaw I* involved a challenge to North Carolina's 12th congressional district under a redistricting plan that "separate[d] voters into different districts on the basis of race." *Id*. at 649. Cases applying *Shaw I* have similarly involved challenges to a specific district map or to the boundaries of specific districts. *See*, *e.g.*, *Cooper*, 137 S.Ct. 1455 (challenge to North Carolina's congressional districts 1 and 12); *Ala. Legis. Black Caucus v. Alabama*, 135 S.Ct. 1257 (2015) (challenge to Alabama's senate district 26); *Shaw v. Hunt*, 517 U.S. 899 (1996) (*Shaw II*) (challenge to North Carolina's congressional districts 1 and 12); *Miller v. Johnson*, 515 U.S. 900, 903 (1995) (challenge to Georgia's congressional district 11). In his opposition, Plaintiff sums up why the *Shaw I* cases do not apply in one sentence: "Higginson does not challenge *how* the City drew its lines; he challenges *why* it decided to draw lines in the first place." Opp. at 24. The *Shaw I* line of cases generally addresses redistricting remedies addressed to violations of § 2, not to determinations that an at-large election has violated § 2 and a remedy is needed. By analogy, these cases could be applied where a plaintiff challenges a redistricting plan adopted to remedy a violation of the CVRA if that plaintiff alleges that the lines themselves were drawn based on race. But they are ill-fitted for consideration of the underlying decision to draw districts in the first place. Plaintiff offers no case where a court has applied the standards

6

developed in the *Shaw I* redistricting cases to a political subdivision's underlying decision to change from one type of electoral system to another, and the Attorney General is not aware of any.

*Second*, Plaintiff is incorrect in his insistence that strict scrutiny applies to the CVRA. Citing *Cooper v. Harris*, 137 S.Ct. 1455, 1464 (2017), Plaintiff argues that "[t]he Supreme Court has held that 'if racial considerations predominated over other considerations' in fashioning *an electoral system*, that system must 'withstand strict scrutiny.'" Opp. at 19 (emphasis added). But in *Cooper*, the Supreme Court held only that "if racial considerations predominated over others, *the design of the district* must withstand strict scrutiny." *Id*. at 1464 (emphasis added). In fact, the Supreme Court held that for strict scrutiny to apply to a district, a plaintiff must first prove that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Id*. at 1463 (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)). Similarly, *Shaw II*, 517 U.S. 899, cited in the Complaint (Compl. at ¶ 13), held that "strict scrutiny applies when race is the 'predominant' consideration *in drawing the district lines*." *Id*. at 907 (emphasis added). The Complaint in this case makes no allegations about the reasons why certain voters were placed in one district versus another in the City's by-district map. Because there is no allegation that voters were sorted or classified by race, strict scrutiny does not apply.

A California Court of Appeal has held that strict scrutiny does not apply to the CVRA and that the CVRA withstands rational basis review. *Sanchez v. Modesto*, 145 Cal. App. 4th 660, 680 (2006). Plaintiff offers no reason why this Court should depart from this decision aside from the belief that it was wrongly decided. But the state court's interpretation of a state statute is entitled to weight in federal courts considering the constitutionality of such statutes. *Cal. Teachers Ass'n v. Davis*, 64 F. Supp. 2d 945 (C.D. Cal. 1999). The cases Plaintiff points to as purportedly conflicting with the *Sanchez* decision are inapposite. Each of those cases involved

7

an express racial classification. *See Powers v. Ohio*, 499 U.S. 400, 410 (1991) (considering the use of race in peremptory strikes to potential jurors); *Johnson v. California*, 543 U.S. 499, 506 (2005) (considering the use of race to place prisoners in double cell arrangements during the first six months of their incarceration); *Shaw I*, 509 U.S. 630 (considering the use of race to place voters in one district or another). As explained in *Sanchez*, the CVRA does not include an express racial classification. Instead it creates a private cause of action for a person of any race to challenge the use of at-large elections where racially polarized voting exists. *Sanchez*, 145 Cal. App. 4th at 666 (finding that "[t]he CVRA is race neutral" because it "does not favor any race over others or allocate burdens or benefits to any groups on the basis of race.")

*Third*, the CVRA is an independent state statute, "enacted to implement the guarantees of Section 7 of Article I and Section 2 of Article II of the California Constitution." Cal. Elec. Code § 14032. It is not limited by the scope of § 2 of the FVRA. Plaintiff seems to allege that the outer boundary of § 2 is defined by the Fourteenth Amendment and, therefore, to the extent that the CVRA reaches vote dilution claims that would not violate § 2, it is unconstitutional. Opp. at 19-20. But the two statutes are not the same and the same Fourteenth Amendment analysis does not automatically apply to both.

Plaintiff relies on *Bartlett v. Strickland*, 556 U.S. 1 (2009), and *Growe v. Emison*, 507 U.S. 25 (1993), arguing that the CVRA "turns entirely on the existence of racially polarized voting" and that this "is the kind of rule the Supreme Court has cautioned would make race far too significant a factor" such that strict scrutiny analysis is required. Opp. at 20. But neither of those cases supports Plaintiff's argument. In *Strickland*, the Court determined that § 2 does not require legislatures to draw crossover districts, i.e., districts in which white voters join with minority voters in sufficient numbers to elect the minorities' candidate of choice. *Strickland*, 556 U.S. at 23-25. The Supreme Court expressed concern that

8

interpreting § 2 to require crossover districts "would require courts to make predictive political judgments" about local politics, which "would be speculative at best." *Id.* at 18. However, the Supreme Court did "not consider the permissibility of such districts as a matter of legislative choice or discretion." *Id*. at 23. In any event, a move from at-large elections to by-district elections does not pose the same issues as a district plan that includes crossover districts, and thus does not implicate the Fourteenth Amendment in the same way.

In *Growe v. Emison*, the Supreme Court reversed a district court's imposition of its own redistricting plan where a state court was already working on but had not yet completed its own plan. *Growe*, 507 U.S. at 42. The Supreme Court found that the district court "erred in not deferring to the state court's efforts to redraw Minnesota's state legislative and federal congressional districts." *Id*. The Court did not even reach the question of whether a certain rule or remedy complied with the Fourteenth Amendment, though it did confirm the necessity of the three-part *Gingles* analysis considering claims under § 2. *Id.* at 41-42. In fact, the Supreme Court recognized in *Growe* "that multimember districting plans, as well as at-large plans, generally pose greater threats to minority-voter participation in the political process than do single-member districts" before considering whether the *Gingles* test could be applied in a "vote-fragmentation challenge to a single-member district." *Id*. Like *Strickland*, *Growe* did not involve a move from at-large elections to by-district elections or anything similar, and it did not pose similar issues that might create tension with the Fourteenth Amendment. Neither case supports Plaintiff's argument that a move from at-large election to by-district elections to remedy the effect of racially polarized voting in at-large elections creates any tension with the Fourteenth Amendment.

*Finally*, Plaintiff's facial challenge to the statute must fail because he has not alleged that the CVRA is unconstitutional in all its applications. Plaintiff argues that in applying the all circumstances test under *Los Angeles v. Patel*, 135 S. Ct.

2443, 2451 (2015), the Court should only look to those cases "where [the CVRA] does not duplicate the relief available under Section 2." Opp. at 24. But the CVRA creates a cause of action available to plaintiffs who could potentially raise similar claims under § 2. Thus it would make no sense to limit the analysis of Plaintiff's facial CVRA challenge to those cases that do not overlap with § 2. Instead, the Court should look to those instances where the CVRA actually applies—where racially polarized voting exists and at-large elections impair minority voters' ability to elect a candidate of choice or influence electoral outcomes. The risk that an unconstitutional remedy might be imposed does not render the CVRA itself facially unconstitutional. *Sanchez*, 145 Cal. App. 4th at 686.

## CONCLUSION

For the foregoing reasons and those stated in the Attorney General's memorandum of points and authorities in support of his motion to dismiss, the Attorney General requests that the complaint be dismissed in its entirety.

Dated: December 19, 2017

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Amie L. Medley*_____
AMIE L. MEDLEY
Deputy Attorney General
*Attorneys for Defendant Xavier Becerra*

# CERTIFICATE OF SERVICE

| Case Name: | **Higginson, Don v. Xavier Becerra, et al.** | No. | **3:17-CV-2032 WQHJLB** |
|---|---|---|---|

I hereby certify that on <u>December 19, 2017</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT XAVIER BECERRA'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>December 19, 2017</u>, at Los Angeles, California.

| Amie L. Medley | /s/ *Amie L. Medley* |
|---|---|
| Declarant | Signature |