UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON HIGGINSON,<br><br>Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as ATTORNEY GENERAL OF CALIFORNIA; and CITY OF POWAY, CALIFORNIA,<br><br>Defendants. | Case No.: 17cv2032-WQH-JLB<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the motion for a preliminary injunction filed by Plaintiff Don Higginson (ECF No. 11); the motion to intervene filed by California League of United Latin American Citizens, Jacqueline Contreras, Xavier Flores, Judy Ki, and Hiram Soto (ECF No. 18); the motion to dismiss filed by Defendant Xavier Becerra (ECF No. 33); and the motion for leave to file amici curiae brief of the San Gabriel Valley Council of Governments, et al. (ECF No. 53).

## I.    BACKGROUND

On October 4, 2017, Plaintiff Don Higginson initiated this action by filing the Complaint against Defendants Attorney General Xavier Becerra (the "Attorney General") and the City of Poway (the "City"). (ECF No. 1). Higginson alleges a cause of action

pursuant to 42 U.S.C. §§ 1983 and 1988 for a violation of his rights under the Fourteenth Amendment. Higginson asserts that the California Voting Rights Act ("CVRA") and the City's Map 133, allegedly enacted as a result of the CVRA, violate the equal protection clause. Higginson seeks an order declaring the CVRA and Map 133 unconstitutional and enjoining their enforcement and use.

On October 19, 2017, Higginson filed a motion for a preliminary injunction. (ECF No. 11). Higginson seeks a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) which temporarily enjoins "Defendant Attorney General Xavier Becerra and his agents from enforcing the California Voting Rights Act and Defendant City of Poway from using Map 133 for elections during the pendency of this action." *Id.* at 2.

On November 6, 2017, the City filed a response to the motion for a preliminary injunction stating that it takes a neutral position in this litigation and "does not intend to defend the constitutionality of the CVRA or otherwise actively support or oppose the Motion." (ECF No. 16 at 2). The City states that "unless and until this (or any) Court orders otherwise, the City will continue implementing by-district elections pursuant to the Ordinance, which means that the City will begin the transition to the election system adopted therein during the November 2018 election." *Id.* at 2. The City requests that the Court make its ruling prior to May 1, 2018 to "provide potential candidates with sufficient time to make decisions in advance of the formal July nominations filing period." *Id.* at 3.

On November 6, 2017, the California League of United Latin American Citizens ("LULAC"), Jacqueline Contreras, Xavier Flores, Judy Ki, and Hiram Soto ("the Proposed Intervenors") filed a motion to intervene and lodged an opposition to the motion for a preliminary injunction. (ECF Nos. 18, 19).

On November 7, 2017, the Attorney General filed a response in opposition to the motion for a preliminary injunction. The Attorney General asserts that Higginson lacks standing and "has not established a likelihood of success on the merits on his Fourteenth Amendment claim" or "any of the remaining factors . . . necessary to show he is entitled to a preliminary injunction." (ECF No. 22).

On November 22, 2017, the Attorney General filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The Attorney General asserts that Higginson lacks Article III standing to bring this action and that Higginson fails to state a claim upon which relief can be granted. (ECF No. 33). On December 12, 2017, Higginson filed a response in opposition. (ECF No. 48). On December 12, 2017, the City filed a response stating that the City intends to maintain a "neutral position in this action" and "will not support or oppose" the motion to dismiss. (ECF No. 47 at 2).

On December 14, 2017, the City of Mission Viejo filed a motion for leave to file an amicus curiae brief in support of the motion for a preliminary injunction. (ECF No. 49). On December 18, 2017, the Court granted the motion and deemed the Mission Viejo amicus curiae brief to be filed. (ECF No. 51).

On December 18, 2017, the San Gabriel Valley Council of Governments, the City of Arcadia, the City of Barstow, the City of Fullerton, the City of Glendora, the City of South Pasadena, and the City of West Covina filed an application for leave to file an amicus curiae brief in support of the motion for a preliminary injunction. (ECF No. 53).

On January 5, 2018, the Attorney General filed a motion for leave to file a response to the amicus curiae brief filed by the City of Mission Viejo. (ECF No. 59). On January 9, 2018, the Court granted the motion and allowed the City of Mission Viejo to file a response. (ECF No. 62). On January 10, 2018, the Attorney General filed a response to the amicus curiae brief filed by the City of Mission Viejo. (ECF No. 63).

On January 12, 2018, the Court heard oral argument on the motion for a preliminary injunction.

## II.   ALLEGATIONS OF THE COMPLAINT

The City is a "California general law city and a municipal corporation organized and existing under and by virtue of the laws of the State of California." (ECF No. 1 at ¶ 12). The City is subject to the CVRA. *Id.* "As a direct result of that statute, the City has

abandoned its at-large voting system and switched to by-district elections that are the product of racial gerrymandering." *Id.*

The City has used an at-large voting system to elect its City Council for decades. *Id.* ¶ 31. "On June 7, 2017, the City received a certified letter from an attorney, Kevin Shenkman, asserting that the City's at-large system violates the CVRA." *Id.* ¶ 32. "According to Mr. Shenkman, 'Poway's at-large system dilutes the ability of Latinos (a 'protected class') to elect candidates of their choice or otherwise influence the outcome of Poway's council elections.' Therefore, unless the City 'voluntarily change[s] its at-large system of electing council members . . . [he] will be forced to seek judicial relief.'" *Id.* ¶ 34. "Mr. Shenkman gave the City until June 21, 2017 to notify him whether it would come into compliance with the CVRA." *Id.*

"On June 20, 2017, in response to the Shenkman letter, the City Council held a closed session to discuss the threatened CVRA litigation." *Id.* ¶ 35. "[T]he City Council provided direction to staff to prepare a resolution of intention for establishing and implementing by-district elections for the City Council members to be presented for consideration at the July 18, 2017 City Council meeting." *Id.*

> In recommending the adoption of the resolution ahead of the July 18 meeting, the City Attorney explained that "the risks and costs associated with protracted CVRA litigation—particularly in light of results in all other cities that have fought to retain at large voting—cannot be ignored. The public interest may ultimately be better served by a by-district electoral system if converting to that system avoids significant attorneys' fees and cost award."

*Id.* ¶ 36. "At the City Council meeting on July 18, an outside attorney the City hired to advise it on the Shenkman letter outlined the difficulty in defending CVRA lawsuits." *Id.* ¶ 37. "Each member of the City Council . . . expressed his strong disapproval of the changes that the CVRA was forcing the City to make." *Id.* ¶ 41. "City councilmember Jim Cunningham explained that 'the [safe-harbor provision] is truly the shield … we are using to avoid attorney's fees, and costs, and protracted litigation.' He then specifically

sought advice from the outside attorney on whether they were utilizing that provision correctly to avoid those burdens." *Id.* ¶ 42.

> City councilmember John Mullin . . . concluded: "We've gone through denial, and we've gone through anger, and now we're into acceptance. So, to those of you in the audience who think we should be fighting this, we concur, we were there awhile back as well. I have no illusions that this will lead to better government for our city."

*Id.* ¶ 44. "Deputy Mayor Barry Leonard . . . explained his view that . . . 'We don't pick certain people in certain neighborhoods and say we'll treat them any differently. There is no evidence of that whatsoever.'" *Id.* ¶ 45.

> Mayor Steve Vaus concluded, "I'll just echo that this council does a remarkable job [with at-large elections] . . . But we've got to do what we've got to do. And job one is to protect the treasure of our constituents. And it's their money we'd be putting at risk [with litigation] and none of us are willing to do that."

*Id.* ¶ 46.

> The City Council adopted Resolution No. 17-046 setting forth its intention to transition from at-large to by-district elections, pursuant to Elections Code section 10010(e)(3)(A). The Resolution stated that after "the City [had] received a letter threatening action under the California Voting Rights Act," it had "determined that it is in the best interest of the City to move from its current at-large electoral system to a by-district election for members of the City Council, in furtherance of the purposes of [the] California Voting Rights Act."

*Id.* ¶ 47 (first alteration in original). "On August 31, 2017, the Council voted 5-0 to proceed with Map 133, an election plan that divides the City into four districts." *Id.* ¶ 49. "On October 3, 2017, the Council adopted the ordinance enacting Map 133." *Id.* ¶ 51. "The City would not have switched from at-large elections to single-district elections but for the prospect of liability under the CVRA." *Id.* ¶ 52. "City elections using these new districts will be held in 2018." *Id.* ¶ 6.

Higginson is a resident of Poway, California and a registered voter. *Id.* ¶ 10. "Because the California Voting Rights Act has forced the City to abandon at-large

elections, he will now reside in and vote in District 2." *Id.* "District 2, like all of the City's districts, is racially gerrymandered as a result of the redistricting the California Voting Rights Act has imposed on the City." *Id.*

"The CVRA makes race the predominant factor in drawing electoral districts. Indeed, it makes race the only factor given that a political subdivision, such as the City, must abandon its at-large system based on the existence of racially polarized voting and nothing more." *Id.* ¶ 56. "California does not have a compelling interest in requiring any political subdivision, including the City, to abandon its at-large system based on the existence of racially polarized voting and nothing more." *Id.* ¶ 57. "The CVRA also is not narrowly tailored to ensure that minority voters do not have their votes diluted because, among other reasons, it overrides the compactness precondition of Section 2 of the [federal Voting Rights Act]." *Id.* ¶ 58. "[T]he CVRA violates the Equal Protection Clause of the Fourteenth Amendment." *Id.* ¶ 59.

Higginson requests the following relief from the Court:

62. Declare that the California Voting Rights Act requires California political subdivisions, such as the City, to engage in racial gerrymandering in violation of the Equal Protection Clause of the Fourteenth Amendment.
63. Permanently enjoin Defendant Becerra from enforcing or giving any effect to the California Voting Act.
64. Declare Map 133 in violation of the Equal Protection Clause of the Fourteenth Amendment.
65. Permanently enjoin Defendant City of Poway from using Map 133 in any future election.

*Id.* ¶¶ 62-65.

## III. THE CALIFORNIA VOTING RIGHTS ACT

The CVRA provides, in relevant part,

An at-large method of election may not be imposed or applied in a manner that impairs the ability of a protected class to elect candidates of its choice or its ability to influence the outcome of an election, as a result of the dilution or the abridgment of the rights of voters who are members of a protected class,

as defined pursuant to Section 14026.[1]

Cal. Elec. Code § 14027. Pursuant to the CVRA,

(a) A violation of Section 14027 is established if it is shown that racially polarized voting[2] occurs in elections for members of the governing body of the political subdivision or in elections incorporating other electoral choices by the voters of the political subdivision. Elections conducted prior to the filing of an action pursuant to Section 14027 and this section are more probative to establish the existence of racially polarized voting than elections conducted after the filing of the action.

(b) The occurrence of racially polarized voting shall be determined from examining results of elections in which at least one candidate is a member of a protected class or elections involving ballot measures, or other electoral choices that affect the rights and privileges of members of a protected class. One circumstance that may be considered in determining a violation of Section 14027 and this section is the extent to which candidates who are members of a protected class and who are preferred by voters of the protected class, as determined by an analysis of voting behavior, have been elected to the governing body of a political subdivision that is the subject of an action based on Section 14027 and this section. . . .

(c) The fact that members of a protected class are not geographically compact or concentrated may not preclude a finding of racially polarized voting, or a violation of Section 14027 and this section, but may be a factor in determining an appropriate remedy.

(d) Proof of an intent on the part of the voters or elected officials to discriminate against a protected class is not required.

(e) Other factors such as the history of discrimination, the use of electoral devices or other voting practices or procedures that may enhance the dilutive effects of at-large elections, denial of access to those processes determining

---

[1] "'Protected class' means a class of voters who are members of a race, color, or language minority group, as this class is referenced and defined in the federal Voting Rights Act of 1965." Cal. Elec. Code § 14026.
[2] "Racially polarized voting" is defined as "voting in which there is a difference, as defined in case law regarding enforcement of the federal Voting Rights Act of 1965 (52 U.S.C. Sec. 10301 et seq.), in the choice of candidates or other electoral choices that are preferred by voters in a protected class, and in the choice of candidates and electoral choices that are preferred by voters in the rest of the electorate." Cal. Elec. Code § 14026(e).

which groups of candidates will receive financial or other support in a given election, the extent to which members of a protected class bear the effects of past discrimination in areas such as education, employment, and health, which hinder their ability to participate effectively in the political process, and the use of overt or subtle racial appeals in political campaigns are probative, but not necessary factors to establish a violation of Section 14027 and this section.

Cal. Elec. Code § 14028. The CVRA includes a private right of action for voters. "Any voter who is a member of a protected class and who resides in a political subdivision where a violation of Sections 14027 and 14028 is alleged may file an action pursuant to those sections in the superior court of the county in which the political subdivision is located." Cal. Elec. Code § 14032.

In 2016, California amended the Elections Code to add language requiring that a prospective CVRA plaintiff provide written notice to a political subdivision before filing suit under the CVRA.

(e)(1) Before commencing an action to enforce Sections 14027 and 14028, a prospective plaintiff shall send by certified mail a written notice to the clerk of the political subdivision against which the action would be brought asserting that the political subdivision's method of conducting elections may violate the California Voting Rights Act of 2001.

(2) A prospective plaintiff shall not commence an action to enforce Sections 14027 and 14028 within 45 days of the political subdivision's receipt of the written notice described in paragraph (1).

(3)(A) Before receiving a written notice described in paragraph (1), or within 45 days of receipt of a notice, a political subdivision may pass a resolution outlining its intention to transition from at-large to district-based elections, specific steps it will undertake to facilitate this transition, and an estimated time frame for doing so.

(B) If a political subdivision passes a resolution pursuant to subparagraph (A), a prospective plaintiff shall not commence an action to enforce Sections 14027 and 14028 within 90 days of the resolution's passage.

Cal. Elec. Code § 10010. The Elections Code provides that a prospective plaintiff who sent a written notice pursuant to section 10010(e)(1) is entitled, upon written demand, to reimbursement capped at $30,000. Cal. Elec. Code § 10010(f)(3).

## IV. MOTION TO DISMISS

The Attorney General brings a facial attack on the Court's subject matter jurisdiction asserting that Higginson lacks standing to bring this action. The Attorney General contends that Higginson has not sufficiently alleged injury to himself as a result of the CVRA because his claim that "all districts drawn in an effort to correct for vote dilution resulting from at-large district elections violate the Fourteenth Amendment" is a generalized grievance that cannot support standing. (ECF No. 33-1 at 9). The Attorney General contends that the Supreme Court redistricting cases addressing challenges to the way district lines are drawn are inapplicable to this case which challenges the decision to draw the district lines in the first place. The Attorney General contends that Higginson cannot establish standing under these redistricting cases because he does not allege that he "has been personally subjected to a racial classification" and he does not allege sufficient facts to support the conclusory allegation that District 2 has been racially gerrymandered. *Id.* at 11. The Attorney General further contends that Higginson has not established that the City's decision to switch from at-large to by-district elections is traceable to any action by the Attorney General. The Attorney General contends that the Complaint does not contain any allegations that the ordinance enacting Map 133 was enacted to address a CVRA violation or racially-polarized voting in the City. The Attorney General contends that the CVRA does not require any political subdivision to abandon at-large voting unless racially-polarized voting exists. The Attorney General contends that a demand letter from a private party prompted the City's switch to by-district elections and that the allegations of the Complaint indicate that "the costs of litigation under the CVRA rather than the CVRA itself lead to the City's decision." *Id.* at 13. In addition, the Attorney General contends that the requested relief in the Complaint would not redress Higginson's alleged injury because enjoining the Attorney General from enforcing the statute would not preclude

individuals from bringing private claims under the CVRA.  The Attorney General contends that enjoining the enforcement of the CVRA would not ensure that the City abandons Map 133 because the City "voluntarily changed" to a by-district system and did not change due to any finding of a CVRA violation.  *Id.* at 14.

Higginson contends that the Complaint alleges a cognizable harm to him because the City has segregated all City voters into separate voting districts on the basis of race and without sufficient justification.  (ECF No. 48 at 20).  Higginson contends that he does not assert a generalized grievance because he alleges that "there was no sufficient justification for making race the predominant factor in creating *his* district."  *Id.*  Higginson contends that the CVRA was a "substantial motivating factor" in the "decision to switch to by-district elections" because the Complaint "plausibly alleges that the City would have retained at-large elections absent the CVRA."  *Id.* at 21.  Higginson asserts that he properly brings this action against the Attorney General and that the Court can enjoin the Attorney General from enforcing the law under *Ex Parte Young*.[3]  Higginson asserts that the City "had every reason to believe it was violating the CVRA" and that the allegations of the Complaint demonstrate that the City had a "real and reasonable apprehension" of liability under the CVRA.  *Id.* at 22.  Higginson contends that the Court can redress Higginson's injury by "enjoining Map 133 and restoring the preexisting at-large system."  *Id.*  Higginson contends a declaration that the CVRA is unconstitutional will preclude private parties from enforcing the CVRA.  Higginson contends that the Attorney General's assertion that the City voluntarily changed to by-district elections is "speculation divorced from the Complaint's allegations."  *Id.* at 23.

### A. Applicable Law

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on the grounds that the court lacks jurisdiction over the subject matter.  Fed.

---

[3] 209 U.S. 123 (1908)

R. Civ. P. 12(b)(1).  A jurisdictional attack pursuant to Rule 12(b)(1) may be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack on subject matter jurisdiction under Rule 12(b)(1), the court assumes the factual allegations of the complaint to be true and draws all reasonable inferences in favor of the plaintiff.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). However, the court does not accept "the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

The Article III standing doctrine limits federal court jurisdiction.  *See La Asociacon de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).  "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  In order "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61).  The party invoking federal jurisdiction bears the burden of establishing that the standing requirements of Article III are satisfied.  *Spokeo*, 136 S. Ct. at 1547.

### B. Discussion

In *United States v. Hays*, 515 U.S. 737 (1995) and *Sinkfield v. Kelley*, 531 U.S. 28 (2000), plaintiffs challenged the way district boundary lines were drawn as unconstitutional

racial gerrymanders in violation of the equal protection clause. In *Hays*, the Supreme Court addressed the requirements of injury in fact, stating:

> Any citizen able to demonstrate that he or she, personally, has been injured by that kind of racial classification has standing to challenge the classification in federal court. Demonstrating the individualized harm our standing doctrine requires may not be as easy in the racial gerrymander context, as it will frequently be difficult to discern why a particular citizen was put in one district or another . . . . Where a plaintiff resides in a racially gerrymandered district, however, the plaintiff has been denied equal treatment because of the legislature's reliance on racial criteria, and therefore has standing to challenge the legislature's action.

*Hays*, 515 U.S. at 744–45. The Court stated, "[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." *Id.* at 743. In *Sinkfield* and *Hays*, the Supreme Court determined that the challengers lacked standing to assert an equal protection claim because they did not allege or produce any evidence to establish that they "had been personally subjected to a racial classification." *Sinkfield*, 531 U.S. at 30; *see also Hays*, 515 U.S. at 746 ("The fact that Act 1 affects all Louisiana voters by classifying each of them as a member of a particular congressional district does not mean – even if Act 1 inflicts race-based injury on some Louisiana voters – that every Louisiana voter has standing to challenge Act 1 as a racial classification."); *Sinkfield*, 531 U.S. at 30 ("Appellees are challenging their own majority-white districts as the product of unconstitutional racial gerrymandering under a redistricting plan whose purpose was the creation of majority-minority districts, some of which border appellees' district. Like the appellees in *Hays*, they have neither alleged nor produced any evidence that any of them was assigned to his or her district as a direct result of having 'personally been subjected to a racial classification.'").

Higginson's equal protection claim is distinguishable from the claims in *Hays* and *Sinkfield*. Higginson does not challenge the boundaries of his particular district. Higginson asserts that he has been personally subjected to a racial classification because he is now

limited to voting in District 2 and that all of the City's districts are racially gerrymandered as a result of the districting imposed on the City by the facially-unconstitutional CVRA. *See* ECF No. 1 at ¶ 10. Higginson alleges, "District 2, like all of the City's districts is racially gerrymandered as a result of the redistricting the [CVRA] has imposed on the City." *Id.* Higginson contends that a political subdivision that changes its election system in an effort to comply with the CVRA denies each of its citizens equal treatment because of the CVRA's reliance on race-based criteria. Under Higginson's theory of liability, all citizens of Poway have suffered an injury in fact and have standing to bring an equal protection claim against the Attorney General challenging the constitutionality of the CVRA.

California law expressly permits the City to elect members of a legislative body through by-district elections. Section 34886 of the California Government Code provides:

> [T]he legislative body of a city may adopt an ordinance that requires the members of the legislative body to be elected by district or by district with an elective mayor, as described in subdivisions (a) and (c) of Section 34871, without being required to submit the ordinance to the voters for approval. An ordinance adopted pursuant to this section shall include a declaration that the change in the method of electing members of the legislative body is being made in furtherance of the purposes of the California Voting Rights Act of 2001.

Cal. Gov't Code § 34886. Section 34886 expressly authorizes a political subdivision like the City to adopt by-district elections without voter approval and in furtherance of the CVRA. *See also* Cal. Gov't Code § 34871 (authorizing a legislative body to submit to voters an ordinance providing for by-district elections for members of the legislative body). Assuming that Higginson's inability to vote for councilmembers in three of the four districts after the enactment of Map 133 could constitute an "invasion of a legally protected interest" under Ninth Circuit precedent in an equal protection case, Higginson must plead facts to demonstrate that his injury is "fairly traceable" to requirements imposed on the City by the CVRA. *Lujan*, 504 U.S. at 560; *see League of United Latin American Citizens,*

*Dist. 19 v. City of Boerne*, 659 F.3d 421, 430 (Fifth Cir. 2011) (determining that the deprivation of a "pre-existing right to vote for all the members of the city council which has jurisdiction over the city where he lives" constituted an injury sufficient to satisfy Article III). Higginson's claim that he suffered an injury because District 2 is a product of racial gerrymandering relies on his allegation that the requirements of the CVRA forced the City to create District 2 and his legal conclusion that the CVRA is a facially unconstitutional law requiring political subdivisions to violate the equal protection clause.[4] *Id.* ¶¶ 5, 10, 59.

To satisfy the causation element of Article III standing, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560; *see also Bennett v. Spear*, 520 U.S. 154, 167 (1997). "To plausibly allege that the injury was 'not the result of the independent action of some third party' . . . the plaintiff must offer facts showing that the government's unlawful conduct 'is at least a substantial factor motivating the third parties' actions.'" *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014). "*Lujan* states that when 'causation and redressability . . . hinge on response of the regulated (or regulable) third party to the government action,' more particular facts are needed to show standing." *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir.), opinion amended on denial of reh'g, 312 F.3d 416 (9th Cir. 2002) (citing *Lujan,* 504 U.S. at 561–62). "That's so because the third parties may well have engaged in their injury-inflicting actions even in the absence of the government's challenged conduct." *Mendia*, 768 F.3d at 1013 (citing *Americans for Safe Access v. DEA*, 706 F.3d 438, 448 (D.C. Cir. 2013)); *see Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015) (quoting *Mendia*, 768 F.3d at 1013)

---

[4] In *Sanchez v. City of Modesto*, a California appellate court considered a facial challenge on equal protection grounds to the CVRA and determined that the CVRA was constitutional. 51 Cal. Rptr. 3d 821, 837 (Ct. App. 2006) ("The CVRA is nondiscriminatory, not subject to strict scrutiny, and passed rational basis review").

("Plaintiffs themselves have alleged facts showing that the two companies 'may well have engaged in their injury-inflicting actions even in the absence of the government's challenged conduct.' . . . This is fatal to Plaintiffs' effort to allege causation.")

In this case, the Complaint does not allege any existing or threatened enforcement action under the CVRA against the City by the Attorney General or other state agency which motivated the City's switch to by-district elections. However, Higginson asserts that the Attorney General is the appropriate party to sue in this facial challenge to the CVRA because the Attorney General is the individual responsible for enforcing the CVRA, relying on *Ex Parte Young*, 209 U.S. 123 (1908).

In *Ex Parte Young*, the Supreme Court established an exception to Eleventh Amendment sovereign immunity which otherwise protects states against suits by citizens in federal court. 209 U.S. 123 (1908). The *Ex Parte Young* exception to Eleventh Amendment sovereign immunity provides that "private individuals may sue state officials for prospective relief against ongoing violations of federal law." *Nat'l Audubon Soc'y*, 307 F.3d at 847. For the exception to apply, the state official "must have some connection with enforcement of the act." *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (citing *Ex Parte Young*, 209 U.S. at 157). However, "a present threat of enforcement" is not required to satisfy *Ex Parte Young*. *Nat'l Audubon Soc'y*, 307 F.3d at 847. The Ninth Circuit Court of Appeals has determined any "imminence" requirement is addressed by "general Article III and prudential ripeness requirements." *Id.* ("We decline to read additional 'ripeness' or 'imminence' requirements into the *Ex Parte Young* exception to Eleventh Amendment immunity in actions for declaratory relief beyond those already imposed by a general Article III and prudential ripeness analysis. The Article III and prudential ripeness requirements . . . are tailored to address problems occasioned by an unripe controversy."); *Association des Eleveurs*, 729 F.3d at 944 ("[A] plaintiff need not show that a 'present threat of enforcement' exists before invoking the *Ex Parte Young* exception . . . . Instead, a state official who contends that he or she will not enforce the law may challenge plaintiff's Article III standing based on an

'unripe controversy.'").  In this case, the Attorney General has not challenged Higginson's action on Eleventh Amendment grounds and *Ex Parte Young* does not provide support for Higginson's contention that the causation element of Article III standing is met simply because the Attorney General enforces the CVRA.  In cases challenging the constitutionality of legislation, the Ninth Circuit Court of Appeals has consistently held that the "mere existence of a statute" or a "generalized threat of prosecution" are insufficient to satisfy Article III standing.  *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983)) ("We have repeatedly admonished, however, that '[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III.'"); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) ("We have held that neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement. . . . Rather, there must be a 'genuine threat of imminent prosecution.'").

In this case, Higginson alleges,

The City Council adopted Resolution No. 17-046 setting forth its intention to transition from at-large to by-district elections, pursuant to Elections Code section 10010(e)(3)(A). The Resolution stated that after "the City [had] received a letter threatening action under the California Voting Rights Act," it had "determined that it is in the best interest of the City to move from its current at-large electoral system to a by-district election for members of the City Council, in furtherance of the purposes of California Voting Rights Act."

(ECF No. 1 at ¶ 47).  Higginson alleges, "The City would not have switched from at-large elections to single-district elections but for the prospect of liability under the CVRA." *Id.* ¶ 52.  However, the conclusory allegation that the City would not have "switched from at-large elections to by-district elections but for the prospect of liability under the CVRA" is unsupported by the facts of the Complaint. *Id.*

The CVRA does not require political subdivisions to take action in the absence of racially-polarized voting. *See* Cal. Elec. Code. §§ 14027, 14028. Higginson does not allege facts supporting an inference that the decision to adopt by-district elections was motivated by an effort to address racially-polarized voting in the City's at-large elections or an effort to address a CVRA violation. The factual allegations of the Complaint demonstrate that the members of the City Council uniformly denied the existence of any CVRA violation under the at-large elections. *See* ECF No. 1 at ¶¶ 44-46. The facts alleged in the Complaint support the conclusion that the decision to change to by-district elections was a voluntary business decision made in the "best interest" of the City and to avoid the costs of litigation. *See, e.g.*, *id.* ¶ 47 ("The Resolution stated . . . 'it is in the best interest of the City to move from its current at-large electoral system to a by-district election for members of the City Council, in furtherance of the purposes of [the] California Voting Rights Act.'"); *id.* ¶ 42 ("City councilmember Jim Cunningham explained that 'the [safe-harbor] provision is truly the shield . . . we are using to avoid attorney's fees, and costs, and protracted litigation.'"); *id.* ¶ 45 ("We don't pick certain people in certain neighborhoods and say we'll treat them any differently. There is no evidence of that whatsoever."); *id.* ¶ 46 ("Mayor Steve Vaus concluded, 'I'll just echo that this council does a remarkable job [with at-large elections] . . . . But we've got to do what we've got to do. And job one is to protect the treasure of our constituents. And it's their money we'd be putting at risk [with litigation] and none of us are willing to do that.'"). Higginson does not allege sufficient facts to support an inference that the switch to by-district elections was motivated by an effort to comply with the requirements imposed on the City by the CVRA.

During oral argument, Higginson compared this case to *National Audubon Society* and argued that the CVRA was a but-for cause of the City's decision to switch to by-district elections. In *National Audubon Society*, the Ninth Circuit Court of Appeals determined that a nonprofit organization focused on bird life conservation had Article III standing to challenge a state proposition which banned the use of certain types of animal traps. *Nat'l Audubon Soc'y*, 307 F.3d at 848-49. Following the enactment of the state statute, the

federal government removed certain animal traps in California in order to comply with the requirements of the state statute. The nonprofit organization sought a declaration that the state statute was preempted and could not be enforced by state officials against federal trapping efforts. *Id.* at 848. The Court concluded that the organization alleged sufficient injury to "the aesthetic, recreational, and scientific interest of its members in the observation of birds and other wildlife" that occurred when the federal government removed its traps and exposed the bird population to "immediate risk of harm." *Id.* at 849. The Court of Appeals determined that the injury was "'fairly traceable' to Proposition 4 because the federal government removed traps in direct response to Proposition 4." *Id.* The Court stated that "there was no need to probe precisely why the federal government removed the traps . . . beyond the uncontested fact that the traps would not have been removed *but for* Proposition 4." *Id.*

In this case, the allegations of the Complaint do not support an inference that the requirements imposed on the City by the CVRA were a but-for cause of the City's decision to switch to by-district elections. Rather than adopting by-district elections in an effort to comply with the requirements imposed by the CVRA, the City allegedly adopted by-district elections after receiving the demand letter from a private party[5] in an effort to avoid the costs of litigation. The Court concludes that Higginson does not allege sufficient facts to support an inference that the decision to switch to by-district elections and any resulting injury to Higginson is "fairly traceable" to the requirements imposed on the City by the CVRA. *See Lujan*, 504 U.S. at 560.

To satisfy Article III standing requirements, Higginson must further establish that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 180–81 (citing *Lujan*, 504 U.S. at

---

[5] The CVRA provides for a private cause of action by "[a]ny voter who is a member of a protected class and who resides in a political subdivision where a violation of Sections 14027 and 14028 is alleged." Cal. Elec. Code § 14032.

560–61). California law permits the City to use a by-district election system. *See* Cal. Gov't Code §§ 34886, 34871. The allegations of the Complaint support a conclusion that the City "determined that it [was] in the best interest of the City to move from its current at-large electoral system to a by-district election for members of the City Council, in furtherance of the purposes of [the] California Voting Rights Act." (ECF No. 1 at ¶ 47). Even accepting the legal conclusion that the CVRA is unconstitutional, a decision favorable to Higginson would not preclude the City from using Map 133[6] or require the City to ensure that Higginson could vote for all four councilmembers under the facts alleged in the Complaint. The allegations of the Complaint are insufficient to establish that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 180–81 (citing *Lujan*, 504 U.S. at 560–61).

Higginson fails to allege sufficient facts to establish Article III standing to bring this equal protection claim against the Attorney General. The Attorney General's motion to dismiss the complaint for lack of subject matter jurisdiction is granted.

## V. THE CITY OF POWAY

The City has not filed a motion to dismiss and has repeatedly asserted that it intends to maintain a neutral position in this litigation. The Court has "the power and duty to raise the adequacy of . . . standing sua sponte." *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). The Court concludes that the Complaint must be dismissed as to the City because Higginson has failed to allege sufficient facts to establish that the City's decision to switch to by-district elections is fairly traceable to the requirements imposed by the CVRA on the City or that the City's decision to pass the ordinance changing to by-district elections was otherwise driven by race. In addition, Higginson fails to allege sufficient facts to establish that a favorable outcome is likely to redress any harm to

---

[6] At oral argument, counsel for the City opposed an injunction permanently enjoining use of Map 133.

Higginson.  The Complaint is dismissed with respect to the City for lack of subject matter jurisdiction.

## VI.     MOTION FOR PRELIMINARY INJUNCTION

Higginson seeks a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) which temporarily enjoins "Defendant Attorney General Xavier Becerra and his agents from enforcing the California Voting Rights Act and Defendant City of Poway from using Map 133 for elections during the pendency of this action." (ECF No. 11).  In the opposition to the preliminary injunction, the Attorney General raises Article III standing as a "threshold matter" precluding this suit and the preliminary injunction. (ECF No. 22).  The City maintains its neutral position in this litigation with respect to the preliminary injunction.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). To obtain preliminary injunctive relief, a movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

The Court cannot conclude that Higginson has demonstrated a likelihood of success on the merits in light of the determination that the Complaint fails to allege sufficient facts to establish subject matter jurisdiction.  The motion for a preliminary injunction is denied.

## VII.   AMICUS BRIEFS

The City of Mission Viejo and the San Gabriel Council of Governments have both filed applications to file amicus briefs in this case.  (ECF Nos. 49, 53).  The Court has previously granted the City of Mission Viejo's application.  (ECF No. 51).  The Court grants the Application for Leave to File Amici Curiae Brief of the San Gabriel Council of Governments et al. in support of Plaintiff's Motion for Preliminary Injunction.  (ECF No.

53).  The Amicus Curiae Brief attached to the motion is deemed filed.  The Court has considered both briefs in ruling on the motion for a preliminary injunction.

## VIII.  MOTION TO INTERVENE

Because the Court has determined that it lacks subject matter jurisdiction over this action, the motion to intervene as defendants filed by the Proposed Intervenors is denied without prejudice as moot.  *See United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981) ("Since there is no longer any action in which appellants can intervene, judicial consideration of the question would be fruitless.").

## IX.    CONCLUSION

IT IS HEREBY ORDERED that the motion to dismiss for lack of subject matter jurisdiction filed by Defendant Attorney General Xavier Becerra is GRANTED. (ECF No. 33).  The Complaint is dismissed without prejudice as to Defendant City of Poway and Defendant Attorney General Xavier Becerra.  Any motion for leave to file an amended complaint shall be filed within 30 days of the date of this Order and pursuant to Local Rule 7.1.

IT IS FURTHER ORDERED that the motion for a preliminary injunction filed by Plaintiff Don Higginson is DENIED.  (ECF No. 11).

IT IS FURTHER ORDERED that the motion to intervene filed by California League of United Latin American Citizens, Jacqueline Contreras, Xavier Flores, Judy Ki, and Hiram Soto is DENIED.  (ECF No. 18).

IT IS FURTHER ORDERED that the motion for leave to file an amicus brief in support of the motion for a preliminary injunction filed by the San Gabriel Valley Council of Governments et al. is GRANTED.  (ECF No. 53).  The amicus brief attached to the motion is deemed filed.

IT IS FURTHER ORDERED that the Request for Leave to File Supplemental Joinder Letters in Support of San Gabriel Governments' Amicus Brief is GRANTED. (ECF No. 64).

Dated: February 23, 2018

Hon. William Q. Hayes
United States District Court