1  XAVIER BECERRA
   Attorney General of California
2  MARK R. BECKINGTON
   Supervising Deputy Attorney General
3  AMIE L. MEDLEY
   Deputy Attorney General
4  State Bar No. 266586
     300 South Spring Street, Suite 1702
5    Los Angeles, CA  90013
     Telephone: (213) 269-6226
6    Fax: (213) 897-5775
     E-mail:  Amie.Medley@doj.ca.gov
7  *Attorneys for Attorney General Xavier*
   *Becerra*
8
                 IN THE UNITED STATES DISTRICT COURT
9
              FOR THE SOUTHERN DISTRICT OF CALIFORNIA
10

11

12

13  **DON HIGGINSON,**                    3:17-CV-2032 WQHJLB

14                         Plaintiff,

15        **v.**                          **DEFENDANT XAVIER
                                          BECERRA'S MEMORANDUM OF
16                                        POINTS AND AUTHORITIES IN
                                          SUPPORT OF MOTION TO
17  **XAVIER BECERRA, in his official**   **DISMISS COMPLAINT**
    **capacity as ATTORNEY GENERAL**
    **OF CALIFORNIA; and CITY OF**        Judge:      Hon. William Q. Hayes
18  **POWAY, CALIFORNIA,**                Date:       September 10, 2018

19                         Defendants.    **No Oral Argument Unless Requested
                                          by the Court**
20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

    I.     The Complaint ..................................................................................... 2

    II.    The California Voting Rights Act .......................................................... 2

    III.   The Federal Voting Rights Act ............................................................. 3

LEGAL STANDARD ........................................................................................... 4

ARGUMENT ........................................................................................................ 5

    I.     Plaintiff Has Not Sufficiently Alleged a Claim Under the
          Supreme Court's Redistricting Cases .................................................... 5

         A.   The *Shaw v. Reno* Line of Cases Applies to Challenges to
               the Boundaries of Specific Districts ........................................... 5

         B.   Plaintiff Has Not Sufficiently Alleged Racial
               Gerrymandering Under the *Shaw v. Reno* Line of Cases ........... 6

    II.    The CVRA Does Not Classify Voters by Race or Require that
          Political Subdivisions Do So ................................................................ 8

    III.   The CVRA Is Not Limited by § 2 of the FVRA or the *Gingles*
          Factors ................................................................................................. 9

    IV.   Plaintiff Has Not Sufficiently Alleged a Facial Challenge to the
          CVRA ................................................................................................ 11

CONCLUSION ................................................................................................... 13

i

# TABLE OF AUTHORITIES

**C**ASES                                                    **Page**

*Alabama Legis. Black Caucus v. Alabama*
135 S.Ct. 1257 (2015) ....................................... 6, 7

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................ 4

*Balisteri v. Pacifica Police Dept.*
901 F.2d 696 (9th Cir. 1988) ............................... 4

*Bartlett v. Strickland*
556 U.S. 1 (2009) ............................................. 10

*Bethune-Hill v. Virginia State Bd. of Elec.*
137 S.Ct. 788 (2017) .......................................... 5

*Burdick v. Takushi*
504 U.S. 428 (1992) .......................................... 10

*Bush v. Vera*
517 U.S. 952 (1996) ....................................... 4, 10

*Cal. Teachers Ass'n v. State Bd. of Educ.*
271 F.3d 1141 (9th Cir. 2001) .............................. 9

*Chapman v. Meier*
420 U.S. 1 (1975) ............................................. 11

*Cooper v. Harris*
137 S.Ct. 1455 (2017) ..................................... 5, 6, 7

*Gill v. Whitford*
138 S.Ct. 1916 (2018) ........................................ 6

*Gompper v. VSIX, Inc.*
298 F.3d 893 (9th Cir. 2002) ............................... 8

*Growe v. Emison*
507 U.S. 25 (1993) ............................................ 4

1

2

**TABLE OF AUTHORITIES**
**(continued)**

<u>Page</u>

3

4

*Holt Civic Club v. City of Tuscaloosa*
    439 U.S. 60 (1978) ................................................................11

5

6

*Hotel and Motel Ass'n of Oakland v. City of Oakland*
    344 F.3d 959 (9th Cir. 2003) ...............................................12

7

8

*Hoye v. City of Oakland*
    653 F.3d 835 (9th Cir. 2011) ...............................................12

9

*Ileto v. Glock Inc.*
    349 F.3d 1191 (9th Cir. 2003) ...............................................4

10

11

*Johnson v. United States*
    135 S.Ct. 2551 (2015) ..........................................................12

12

13

*Miller v. Johnson*
    515 U.S. 900 (1995) ......................................................5, 7, 8

14

15

*Rogers v. Lodge*
    458 U.S. 613 (1982) ............................................................12

16

17

*Sanchez v. City of Modesto*
    145 Cal. App. 4th 660 (2007).........................................*passim*

18

19

*Shaw v Reno*
    509 U.S. 630 (1993) ......................................................*passim*

20

21

*Thornburg v. Gingles*
    478 U.S. 30 (1986) ........................................................*passim*

22

*Valdez-Lopez v. Chertoff*
    656 F.3d 851 (9th Cir. 2011) ...............................................4

23

24

*Voinovich v. Quilter*
    507 U.S. 146 (1993) .........................................................4, 10

25

26

*Wash. State Grange v. Wash. State Republican Party*
    552 U.S. 442 (2008) .........................................................11, 12

27

28

*Whitcomb v. Chavis*
    403 U.S. 124 (1971) ............................................................13

iii

1

# TABLE OF AUTHORITIES
## (continued)

2

Page

3

STATUTES

4

CALIFORNIA ELECTION CODE

5

§ 14027 .................................................................................... 2, 10

6

§ 14028 .................................................................................... 3, 11
§ 14029 ...................................................................................... 3, 8

7

§ 14031 .......................................................................................... 9

8

§ 14032 ...................................................................................... 3, 8
§ 21601 ........................................................................................... 7

9

FEDERAL VOTING RIGHTS ACT ......................................................... 3

10

52 U.S.C. § 10301(a) .............................................................. *passim*

11

CONSTITUTIONAL PROVISIONS

12

United States Constitution

13

Fourteenth Amendment ......................................................... *passim*

14

California Constitution

15

§ 7, Article I ..................................................................................... 9

16

§ 2, Article II  .................................................................................. 9

17

COURT RULES

18

Federal Rule of Civil Procedure

19

12(b)(6) ............................................................................................ 4

20

21

22

23

24

25

26

27

28

iv

**INTRODUCTION**

Plaintiff Don Higginson challenges the constitutionality of the California Voting Rights Act (CVRA), alleging that it violates the Fourteenth Amendment of the United States Constitution.  He requests declaratory relief invalidating the statute and an injunction preventing Attorney General Xavier Becerra from enforcing the CVRA statewide.  Because Plaintiff has failed to allege a valid claim for relief, and cannot amend his complaint to do so, his entire complaint should be dismissed without leave to amend.

The CVRA provides a private right of action for voters to challenge at-large elections when racially polarized voting has impaired their ability to elect their candidate of choice or to influence electoral outcomes.  The most common remedy for a CVRA violation is a move from at-large elections to by-district elections. Plaintiff alleges in his complaint that changing from at-large voting to by-district voting to remedy vote dilution occurring in a political subdivision is equivalent to racial gerrymandering and thus violates the Fourteenth Amendment.  But he does not allege that he—or any other voter—has been placed in a district based on race. He does not allege that the City of Poway took race into account when drawing its new single-member districts.  And he offers no factual allegations at all that would support the conclusion that his district has been racially gerrymandered.

As such, plaintiff has not sufficiently alleged a claim under the Supreme Court's redistricting cases, beginning with *Shaw v Reno*, 509 U.S. 630 (1993).  Nor has he made any allegations that would support a finding that the CVRA is the type of race-based statute that triggers strict scrutiny.  And nothing alleged in the complaint would support application of the *Gingles* test—which applies in finding vote dilution under § 2 of the Federal Voting Rights Act (FVRA)—applies to claims under the CVRA or that a departure from those standards violates the Fourteenth Amendment.  Plaintiff's allegations also fall far short of establishing that the CVRA is unconstitutional on its face.  Plaintiff cannot add any allegations

1

to his Complaint that would remedy these fundamental flaws.  Thus, the Complaint should be dismissed without leave to amend.

## BACKGROUND

### I.  THE COMPLAINT

Plaintiff alleges that he is a resident and registered voter in the City of Poway. Compl. at ¶ 10.  According to the Complaint, the City of Poway, in response to a letter from a private attorney threatening litigation under the CVRA, abandoned its at-large system for its City Council elections and instead adopted a by-district system and, subsequently, a map dividing the city into four districts. *Id*. at ¶¶ 31-52.  A main consideration in that decision was avoiding the risk of an award of attorneys' fees and costs that could result if the City chose to litigate under the CVRA and was unsuccessful. *Id.* at ¶¶ 27, 36.

Plaintiff alleges that "[t]he CVRA makes race the predominant factor in drawing electoral districts" because "a political subdivision, such as the City, must abandon its at-large system based on the existence of racially polarized voting." *Id*. at ¶ 56.  Thus, the district to which plaintiff has been assigned—and all the other districts—are "racially gerrymandered" and trigger strict scrutiny.  *Id*. at ¶¶ 10, 56. He then argues that the CVRA cannot pass strict scrutiny and thus violates the Fourteenth Amendment.  *Id*. at ¶¶ 57-59.  Plaintiff also alleges that the CVRA is unconstitutional because it eliminates the compactness requirement that the Supreme Court has developed in the context of vote dilution cases under § 2 of the Federal Voting Rights Act.  *Id*. at ¶¶ 18-19.

### II.  THE CALIFORNIA VOTING RIGHTS ACT

The CVRA provides that "[a]n at-large method of election may not be imposed or applied in a manner that impairs the ability of a protected class to elect candidates of its choice or its ability to influence the outcome of an election, as a result of the dilution or the abridgment of the rights of voters who are members of a protected class . . . ."  Cal. Elec. Code, § 14027.  To establish a violation under the

2

1   CVRA, a plaintiff must show that "racially polarized voting occurs in elections for

2   members of the governing body of the political subdivision or in elections

3   incorporating other electoral choices by the voters of the political subdivision."

4   Cal. Elec. Code, § 14028(a).  "Racially polarized voting" is defined as "voting in

5   which there is a difference . . . in the choice of candidates or other electoral choices

6   that are preferred by voters in a protected class, and in the choice of candidates and

7   electoral choices that are preferred by voters in the rest of the electorate." *Id*.,

8   § 14026(e).  Under the CVRA "[a]ny voter who is a member of a protected class

9   and who resides in a political subdivision where a violation of Section 14027 and

10  14028 is alleged may file an action pursuant to those sections . . . ." *Id*., § 14032.

11  "Upon finding a violation [of the CVRA], the court shall implement appropriate

12  remedies, including the imposition of district-based elections, that are tailored to

13  remedy the violation." *Id.*, § 14029.

14  **III.  THE FEDERAL VOTING RIGHTS ACT**

15      The CVRA overlaps to some extent with § 2 of the Federal Voting Rights Act

16  (FVRA).  52 U.S.C. § 10301(a).  The FVRA prohibits a variety of voting practices

17  or procedures that discriminate on the basis of race.  The CVRA is a more focused

18  statute that specifically addresses vote dilution resulting from at-large elections in

19  political subdivisions where racially polarized voting impairs the ability of voters

20  belonging to a protected class to influence election outcomes.

21      The United States Supreme Court has adopted a three-prong test for the

22  application of § 2 of the FVRA in voting rights cases where minority voters' ability

23  to elect candidates of choice is at issue.  *Thornburg v. Gingles*, 478 U.S. 30, 50-51

24  (1986).  Under the *Gingles* test for establishing vote dilution under § 2, a plaintiff

25  must establish (1) a minority group is sufficiently large and geographically compact

26  to constitute a majority in a reasonably configured legislative district; (2) the

27  minority group is politically cohesive; and (3) a district's majority votes sufficiently

28  as a bloc to usually defeat the minority's preferred candidate.  *Id*.

1    The usual remedy for a finding of vote dilution under § 2, particularly in cases

2    challenging the use of at-large elections to dilute minority voting power, is the

3    imposition of a by-district election system. *Growe v. Emison*, 507 U.S. 25, 40

4    (1993) ("[W]e have strongly preferred single-member districts for federal-court-

5    ordered reapportionment.") (citing *Connor v. Finch*, 431 U.S. 407, 415 (1977)).

6    Legislative bodies have more leeway than the federal courts in adopting single-

7    member districts to remedy § 2 violations. *Bush v. Vera*, 517 U.S. 952, 978 (1996)

8    ("the States retain a flexibility that federal courts enforcing § 2 lack") (plurality

9    opinion). "[T]he federal courts are bound to respect the States' apportionment

10   choices unless those choices contravene federal requirements." *Voinovich v.*

11   *Quilter*, 507 U.S. 146, 156 (1993).

12                          **LEGAL STANDARD**

13   A motion under Federal Rule of Civil Procedure 12(b)(6) tests the legal

14   sufficiency of the claims stated in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191,

15   1199-1200 (9th Cir. 2003). The legal sufficiency of a complaint is measured by

16   whether it provides "sufficient factual matter, accepted as true, to state a claim for

17   relief that is plausible on its face." *Valdez-Lopez v. Chertoff*, 656 F.3d 851, 859 (9th

18   Cir. 2011). In other words, the complaint must indicate a cognizable legal theory

19   for the case. "Dismissal can be based on the lack of a cognizable theory or the

20   absence of sufficient facts alleged under a cognizable theory." *Balisteri v. Pacifica*

21   *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint "that offers 'labels

22   and conclusions' or 'a formulaic recitation of the elements of a cause of action will

23   not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the

24   elements of a cause of action, supported by mere conclusory statements, do not

25   suffice." *Id*.

26   ///

27   ///

28   ///

4

**ARGUMENT**

I.   **PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED A CLAIM UNDER THE SUPREME COURT'S REDISTRICTING CASES**

A.   **The *Shaw v. Reno* Line of Cases Applies to Challenges to the Boundaries of Specific Districts**

The cases Plaintiff relies on in his complaint are part of a line of cases, beginning with *Shaw*, 509 U.S. 630, in which plaintiffs challenged the way that particular district lines were drawn and whether race predominated in drawing those lines such that voters' equal-protection rights had been violated. *See*, *e.g.*, *Cooper v. Harris*, 137 S.Ct. 1455, 1465 (2017) (challenge to North Carolina's congressional districts 1 and 12); *Bethune-Hill v. Virginia State Bd. of Elec.*, 137 S.Ct. 788, 794 (2017) (challenge to twelve of Virginia's house of delegates districts); *Miller v. Johnson*, 515 U.S. 900, 903 (1995) (challenge to Georgia's congressional district 11).

But Plaintiff does not challenge the boundaries of any specific district the City of Poway drew in creating Map 133.  He does not allege that the City of Poway considered race when drawing Map 133.  He alleges instead that the City's adoption of Map 133 violates his Fourteenth Amendment rights because it was done to avoid litigation threatened under the CVRA.  Plaintiff further alleges that "[t]he CVRA makes race the predominant factor in drawing electoral districts." Compl. at ¶ 56.  In fact Plaintiff goes further, alleging that the CVRA "makes race the only factor" in deciding to adopt by-district elections "given that a political subdivision . . . must abandon its at-large system based on the existence of racially polarized voting and nothing more." *Id*.  Plaintiff attempts to apply the "predominant factor" analysis of the *Shaw* cases outside the context of determining whether an individual district violates the Fourteenth Amendment.

But the *Shaw* line of cases does not apply in this case.  As mentioned, these cases involve challenges to district maps or district lines themselves.  *See*, *e.g.*, *Cooper*, 137 S.Ct. at 1463; *Bethune-Hill*, 137 S.Ct. at 797; *Miller*, 515 U.S. at 903.

5

1   The Supreme Court has held that a racial gerrymandering claim "applies to the
2   boundaries of individual districts . . . We have consistently described a claim of
3   racial gerrymandering as a claim that race was improperly used in the drawing of
4   the boundaries of one or more specific electoral districts." *Alabama Legis. Black*
5   *Caucus v. Alabama*, 135 S.Ct. 1257, 1265 (2015); *see also Gill v. Whitford*, 138
6   S.Ct. 1916, 1930 (2018) ("Plaintiffs who complain of racial gerrymandering in their
7   State cannot sue to invalidate the whole State's legislative districting map; such
8   complaints must proceed 'district-by-district'") (citing *Alabama Legis. Black*
9   *Caucus*, 575 U.S. at 1265).

10          The standard of whether "race was a predominant factor" or whether
11   "traditional districting principles were subordinated to race" was developed in the
12   context of challenges to specific district boundaries and has not been applied
13   outside that context.  In particular, it has never been applied to a state statute
14   seeking to address vote dilution resulting from at-large elections or to a decision to
15   switch from at-large to by-district elections.  This Court should follow the Supreme
16   Court's clear instructions in *Alabama Legis. Black Caucus* and decline to apply the
17   *Shaw* cases in the case at hand.

18          **B.    Plaintiff Has Not Sufficiently Alleged Racial Gerrymandering**
19                  **Under the *Shaw v. Reno* Line of Cases**

20          Even if the *Shaw v. Reno* line of cases on which Plaintiff relies could be
21   appropriately applied to his claims, his allegations do not meet the definition of
22   racial gerrymandering developed in those cases.  To establish that racial
23   gerrymandering has occurred, a plaintiff must show that "race was the predominant
24   factor motivating the legislature's decision to place a significant number of voters
25   within or without a particular district."  *Cooper*, 137 S.Ct. at 1463 (citing *Miller*,
26   515 U.S. at 916).  To show that race was the predominant factor in drawing
27   districts, a plaintiff "must prove that the legislature subordinated traditional race-
28   neutral districting principles . . . to racial considerations."  *Alabama Legis. Black*

6

1   *Caucus*, 135 S.Ct. at 1270 (quoting *Miller*, 515 U.S. at 916).  Thus, in determining

2   whether race predominated in drawing district lines, courts consider various factors,

3   including the number of voters from protected classes included in the district,

4   whether the districts are bizarrely shaped, and the legislative purpose behind the

5   line drawing.  *Id*. at 1267.

6         The Complaint does not include any allegations regarding how Map 133 was

7   created or why Plaintiff or any other voter was placed in one district instead of

8   another.  Plaintiff does not allege that the demographic makeup of his district

9   demonstrates that race predominated in the City's map drawing.  He does not allege

10  that District 2 is bizarrely shaped.  He does not allege that the City Council

11  intended to create a majority-minority district or a district where the minority would

12  be sufficient in numbers to influence elections.  He only alleges that the lines were

13  drawn in response to the threat of litigation under the CVRA.

14        The lack of allegations that would support a claim of racial gerrymandering is

15  unsurprising because the CVRA does not, as Plaintiff contends, require political

16  subdivisions to engage in racial gerrymandering.  Moving from at-large elections to

17  single-member districts is not itself equivalent to racial gerrymandering, nor does it

18  automatically result in racial gerrymandering.  Only if race predominated in

19  drawing the districts would racial gerrymandering have occurred.  *See e.g.*, *Cooper*,

20  137 S.Ct. at 1463 (citing *Miller*, 515 U.S. at 916).  Plaintiff has not alleged that the

21  City of Poway, in drawing Map 133, considered race at all in drawing the lines.

22        Neither has Plaintiff alleged that the City departed from California's statutory

23  criteria that enshrine traditional, non-racial districting principles similar to those

24  listed in *Miller* and *Alabama Legis. Black Caucus*.  *See* Cal. Elec. Code, § 21601;

25  *Miller*, 515 U.S. at 916; *Alabama Legis. Black Caucus*, 135 S.Ct. at 1270.

26  California law forbids the subordination of traditional districting principles to race

27  (while still requiring compliance with § 2 of the FVRA).  Cal. Elec. Code, § 21601

28  ("In establishing the boundaries of the council districts the council may give

7

consideration to the following factors: (a) topography, (b) geography, (c) cohesiveness, contiguity, integrity, and compactness of territory, and (d) community of interests of the council districts.")  Absent allegations to the contrary, the City should be presumed to have followed the law.  *See*, *Miller*, 515 U.S. at 916 ("[U]ntil a claimant makes a showing sufficient to support that allegation the good faith of a state legislature must be presumed.")

Because Plaintiff has failed to allege sufficient facts to support a cognizable legal theory under the *Shaw* line of cases, on which he relies, his Complaint should be dismissed.  Alleging additional facts will not change the inapplicability of the Supreme Court's redistricting cases to cases under the CVRA.  Therefore, dismissal should be without leave to amend.  *Gompper v. VSIX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (leave to amend need not be granted when amendment would be futile) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)).

## II.   THE CVRA DOES NOT CLASSIFY VOTERS BY RACE OR REQUIRE THAT POLITICAL SUBDIVISIONS DO SO

Plaintiff alleges that the CVRA fails strict scrutiny and thus violates the Fourteenth Amendment because "its 'race-based sorting of voters' does not serve a 'compelling interest' nor is it 'narrowly tailored.'"  Compl. at ¶ 5.  But the CVRA does not sort voters by race.  Nor does it require political subdivisions to do so in crafting a remedy for a CVRA violation.  The CVRA provides that upon finding a CVRA violation, "the court shall implement appropriate remedies, including the imposition of district-based elections, that are tailored to remedy the violation." Cal. Elec. Code § 14029.  The statute says nothing at all about *how* lines are to be drawn in creating single-member districts.  The CVRA is a race neutral statute that creates a cause of action for voters who wish to challenge the use of an at-large voting system where racially polarized voting has occurred.  Cal. Elec. Code, § 14032; *Sanchez v. City of Modesto*, 145 Cal. App. 4th 660, 666 (2007).  Because

the CVRA does not categorize voters based on race, it does not warrant strict scrutiny but is subject instead to rational basis review. *Id*. at 680.

Indeed, the CVRA has previously withstood a facial Fourteenth Amendment challenge. In *Sanchez*, the Court declined to apply strict scrutiny because it found that the CVRA did "not confer benefits or impose burdens on any particular racial group and does not burden anyone's right to vote," *id*. at 683, and because "[a]ll persons have standing under the CVRA to sue for race-based vote dilution because all persons are members of a race." *Id.* at 685. The CVRA passed rational basis review: "Curing vote dilution is a legitimate government interest and the creation of a private right of action like that in the CVRA is rationally related to it." *Id*. at 688. The plaintiffs in *Sanchez* raised a facial challenge to the CVRA, which the Court rejected because plaintiffs could not show that it was unconstitutional in all its applications. *Id.* at 688. Both the California Supreme Court and the United States Supreme Court declined to review the appellate court's decision. *Id*., *cert. denied*, 128 S.Ct. 438 (2007).

This Court should give significant weight to the *Sanchez* decision in construing the CVRA because "when faced with a constitutional challenge [courts] look to the words of the statute itself as well as state court interpretations of the same or similar statutes." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1147 (9th Cir. 2001). The *Sanchez* court interpreted the CVRA to be a race neutral statute that creates a cause of action available to any voter residing in a political subdivision with at-large elections. This Court should afford this interpretation weight in its analysis, because "it is solely within the province of the state courts to authoritatively construe state legislation." *Id.* at 1146.

### III. THE CVRA IS NOT LIMITED BY § 2 OF THE FVRA OR THE *GINGLES* FACTORS

The CVRA was "enacted to implement the guarantees of Section 7 of Article I and Section 2 of Article II of the California Constitution." Cal. Elec. Code § 14031.

9

1   It is separate and independent from § 2 of the FVRA and is not limited by the scope

2   of § 2.  Thus, it is not appropriate to apply the *Gingles* test for establishing vote

3   dilution under § 2 to CVRA cases.

4       "States do not derive their reapportionment authority from the Voting Rights

5   Act, but rather from independent provisions of state and federal law."  *Voinovich*,

6   507 U.S. at 156.  The CVRA departs from § 2 of the FVRA by making vote

7   dilution actionable whether or not there is a sufficient number of voters belonging

8   to a protected class to create a district that would enable them to elect a candidate of

9   their choice.  It does so by adding "ability to influence the outcome of an election"

10  rather than focusing exclusively on the ability to elect candidates of choice.  Cal.

11  Elec. Code, § 14027.  The Supreme Court has recognized that "the first *Gingles*

12  precondition, the requirement that the group be sufficiently large to constitute a

13  majority in a single district, would have to be modified or eliminated when

14  analyzing [an] influence-dilution claim."  *Voinovich*, 507 U.S. at 158.  This is

15  precisely what the CVRA has done—it has created a remedy for vote dilution even

16  where the compactness criterion is not met.  The Supreme Court has recognized

17  that "States that wish to draw crossover districts," similar to influence districts, "are

18  free to do so where no other prohibition exists."  *Bartlett v. Strickland*, 556 U.S. 1,

19  24 (2009).  The CVRA was within the Legislature's authority to enact and does not

20  contravene any federal requirements, including the Fourteenth Amendment.

21  *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("States retain the power to regulate

22  their own elections.")

23      Section 2 does not form the outer boundary of what state legislatures may do

24  to address vote dilution while still complying with the Fourteenth Amendment.

25  State legislatures retain more flexibility in adopting voting districts than federal

26  courts have in adopting districts or maps to remedy vote dilution or other forms of

27  discrimination in voting under § 2.  *Bush v. Vera*, 517 U.S. at 978.

28  "Reapportionment is primarily the duty and responsibility of the State through its

10

legislature or other body, rather than of a federal court." *Chapman v. Meier*, 420 U.S. 1, 27 (1975) (citing *Reynolds v. Sims*, 377 U.S. 533, 586 (1964)). This includes the ability to set up political subdivisions and impose requirements for local elections. *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 71 (1978) (states have "extraordinarily wide latitude . . . in creating various types of political subdivisions and conferring authority upon them"). "There is no rule that a state legislature can never extend civil rights beyond what Congress has provided." *Sanchez*, 145 Cal. App. 4th at 687.

Because the CVRA is not limited by the scope of § 2, it is also not subject to the test set forth in *Thornburg v. Gingles* for determining whether vote dilution has occurred. The *Gingles* factors or preconditions must be established in order to demonstrate a violation of § 2 of the FVRA. Plaintiff offers no reason that the *Gingles* factors should apply in the CVRA context. The Legislature decided that under the CVRA, compactness is to be considered when selecting and crafting a remedy, rather than in determining liability. Cal. Elec. Code § 14028(c). Section 2 and the *Gingles* test do not constrain the Legislature's ability to enact such a law.

## IV. PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED A FACIAL CHALLENGE TO THE CVRA

Plaintiff's facial challenge to the constitutionality of the CVRA fails. Facial challenges to state statutes are disfavored for a variety of reasons. They "often rest on speculation" resulting in a risk of "premature interpretation of statutes on the basis of factually barebones records." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). "[A] plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its

applications."[1]  *Id*. at 449.  A facial challenge similar to Plaintiff's failed in *Sanchez*.  There, the court explained that:

> [The] arguments are partially based on Supreme Court cases that struck down specific redistricting plans drawn up partly to avoid racial vote dilution that might violate section 2 of the FVRA. Because those cases only address specific actions taken by states to cure racial vote dilution (i.e., the creation of particular districts), their impact here relates only to the validity of specific applications of the CVRA—applications that at this point are hypothetical.

*Sanchez*, 145 Cal. App. 4th at 688.  Likewise, in this case Plaintiff attempts to apply in the CVRA context the test developed through the *Shaw* cases to ensure that single-member districting plans comply with the Fourteenth Amendment.  But the CVRA does not draw single-member districts or offer specific guidance on how to do so.  Instead, Plaintiff asks this court to assume that any single-member district drawn in order to correct for a violation of the CVRA (actual or perceived) must be struck down as an unconstitutional race-based district.  No such assumption can be validly made.

Plaintiff has not sufficiently alleged a facial challenge in this case.  "If it does not charge statutory overbreadth, 'a facial challenge must fail where the statute has a plainly legitimate sweep."  *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) (quoting *Wash. State Grange*, 552 U.S. at 449)).  The CVRA has "a plainly legitimate sweep" because it is aimed at remedying vote dilution resulting from the use of at-large elections in political subdivisions where racially polarized voting occurs.  The harms of vote dilution to minority voters and the effect of at-large districts in impairing minority voting power are well recognized.  *Rogers v. Lodge*, 458 U.S. 613, 616 (1982) ("At-large voting schemes and multimember districts

---

[1] An exception to the all-circumstances test applies when a statute is challenged on the ground of vagueness in either the First Amendment context (*Hotel and Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003), or the criminal context, *Johnson v. United States*, 135 S.Ct. 2551, 2561 (2015).  Neither exception applies here.

12

tend to minimize the voting strength of minority groups by permitting the political majority to elect *all* representatives of the district."); *Whitcomb v. Chavis*, 403 U.S. 124, 158-159 (1971) (noting that multi-member district plans have been criticized due, in part, to "their winner-take-all aspects" and "their tendency to submerge minorities and to overrepresent the winning party as compared with the party's statewide electoral position.")  Though it is possible that a political subdivision might adopt a single-member redistricting plan that does not comport with constitutional requirements, "the possibility of some court imposing an unconstitutional remedy under the CVRA in some cases is not . . . a basis for *facial* invalidation." *Sanchez*, 145 Cal. App. 4th at 686.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the complaint be dismissed in its entirety without leave to amend.

Dated:  August 2, 2018                          Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*s/ Amie L. Medley*
AMIE L. MEDLEY
Deputy Attorney General
*Attorneys for Attorney General Xavier Becerra*

13

# CERTIFICATE OF SERVICE

Case Name:   **Higginson, Don v. Xavier**          No.     **3:17-CV-2032 WQHJLB**
            **Becerra, et al.**

I hereby certify that on <u>August 2, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT XAVIER BECERRA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>August 2, 2018</u>, at Los Angeles, California.

| Amie L. Medley | *Amie L. Medley* |
|:---:|:---:|
| Declarant | Signature |

53013519.docx