1  XAVIER BECERRA
   Attorney General of California
2  MARK R. BECKINGTON
   Supervising Deputy Attorney General
3  AMIE L. MEDLEY
   Deputy Attorney General
4  State Bar No. 266586
    300 South Spring Street, Suite 1702
5    Los Angeles, CA  90013
     Telephone: (213) 269-6226
6    Fax: (213) 897-5775
     E-mail:  Amie.Medley@doj.ca.gov
7  *Attorneys for Defendant Xavier Becerra,*
   *California Attorney General*
8
9             IN THE UNITED STATES DISTRICT COURT
10           FOR THE SOUTHERN DISTRICT OF CALIFORNIA
11
12

13  | **DON HIGGINSON,** | 3:17-CV-2032 WQHJLB |
    |---|---|
14  | Plaintiff, | **REPLY IN SUPPORT OF MOTION TO DISMISS** |
15  | **v.** | Date:        September 10, 2018 |
16  |  | Judge:       Hon. William Q. Hayes |
17  | **XAVIER BECERRA, in his official capacity as ATTORNEY GENERAL OF CALIFORNIA; and CITY OF POWAY, CALIFORNIA,** | **No Oral Argument Unless Requested By Court** |
18  |  |  |
19  | Defendants. |  |

20
21
22
23
24
25
26
27
28

# INTRODUCTION

Plaintiff Don Higginson (Plaintiff) has failed to allege an Equal Protection claim for various reasons, but the Court need look no further than one: Plaintiff does not allege in his complaint that he or any other voter in the City of Poway has been placed in a voting district based on his or her race.  Instead he alleges that his voting district under the City of Poway's new by-district election map (Map 133), like all new districts in the City of Poway, is racially gerrymandered because the decision to adopt the map was made in response to a threat of litigation under the California Voting Rights Act (CVRA).  This allegation fails to state a claim under the Supreme Court's test for racial gerrymandering, which requires that race be the predominant factor in the drawing of specific district lines.

The California Voting Rights Act does not classify voters based on their race.  Nor does it require political subdivisions to do so.  The CVRA simply creates a private right of action by which voters may challenge the use of at-large elections in political subdivisions where racially polarized voting occurs.  The test for racial gerrymandering, developed in a line of cases beginning with *Shaw v. Reno*, 509 U.S. 630 (1993), applies only when the boundaries of individual districts are challenged.  An allegation that race was considered in drawing district lines—not in deciding to move from at-large elections to by-district elections—is required to state a claim under *Shaw*.  The CVRA does not speak to how district lines should be drawn to remedy a violation at all, much less require that political subdivisions consider race in drawing district lines or ensure a specific demographic makeup in the resulting districts.

Plaintiff has failed to state a claim for which relief can be granted and the complaint should be dismissed.

///

///

///

# ARGUMENT

## I.   PLAINTIFF'S EQUAL PROTECTION CLAIM FAILS BECAUSE THE CVRA DOES NOT CLASSIFY VOTERS BASED ON RACE

The CVRA does not classify voters based on race and thus is not subject to strict scrutiny.  Plaintiff cites the Supreme Court's opinion in *Cooper v Harris*, 137 S. Ct. 1455 (2017) for the proposition that the Equal Protection clause "prevents a State, in the absence of 'sufficient justification,' from 'separating its citizens into different voting districts on the basis of race." Opp. at 1.  But he fails to allege in his complaint that voters in the City of Poway have, in fact, been separated into different voting districts on the basis of race.  That is, he does not allege that he himself or any other voter in the City of Poway has been placed in one voting district rather than another based on his or her race.  He only claims that "race was the predominant factor in the City's decision to switch from at-large to by-district elections."  Opp. at 16.  Thus, his claim that his district has been racially gerrymandered fails as a matter of law.

Plaintiff's Equal Protection claim stems from the premise that any law seeking to address vote dilution is the equivalent of racial gerrymandering.  This is not the case.  As the Supreme Court has acknowledged, "[r]edistricting legislatures will . . . almost always be aware of racial demographics; but it does not follow that race predominates in the redistricting process."  *Miller v. Johnson*, 515 U.S. 900, 916 (1995); *see also Shaw*, 509 U.S. at 646 ("race consciousness does not lead inevitably to impermissible race discrimination").  And as the California Court of Appeal explained in *Sanchez v. City of Modesto*, 145 Cal. App. 4th 660 (2006), "[w]hat the [Supreme Court] cases do not hold is that a statute is automatically subject to strict scrutiny because it involves race consciousness even though it does not discriminate among individuals by race and does not impose any burden or confer any benefit on any particular racial group or groups."  *Id*. at 681.  The CVRA's focus on ensuring that voters in protected classes do not have their votes

3

1    diluted by the use of at-large elections does not, as Plaintiff contends "infect" any

2    single-member districts drawn as a result.

3         The *Sanchez* opinion is persuasive in its interpretation of the CVRA.  There,

4    the Court found that "[t]he CVRA is race neutral" and simply "gives a cause of

5    action to members of any racial or ethnic group that can establish that its members'

6    votes are diluted through the combination of racially polarized voting and an at-

7    large election system." *Id.* at 666.  Plaintiff dismisses *Sanchez*, arguing that its

8    "ruling is flawed and should not be followed."  Opp. at 20.  But in *Sanchez*, the

9    California Court of Appeal squarely decided the same issues now before this Court

10   and upheld the CVRA against a similar Fourteenth Amendment challenge.  The

11   only explanation Plaintiff offers as to why this Court should depart from the

12   *Sanchez* court's reasoning is that it purportedly conflicts with "binding precedent"

13   in holding that the CVRA does "not confer benefits or impose burdens on any

14   particular racial group and does not burden anyone's rights to vote."  Opp. at 20

15   (citing *Sanchez*, 145 Cal. App. 4th at 681).  But the cases Plaintiff cites in support

16   of that argument are focused on the existence of racial classifications, which are

17   absent in this case.  *Powers v. Ohio*, 499 U.S. 400, 410 (1991) (considering the use

18   of peremptory challenges to exclude jurors based on race); *Shaw*, 509 U.S. at 651

19   ("district lines obviously drawn for the purpose of separating voters by race require

20   careful scrutiny under the Equal Protection Clause"); *Johnson v. California*, 543

21   U.S. 499, 506 (2005) ("racial classifications receive close scrutiny even when they

22   may be said to burden or benefit the races equally").[1]  Plaintiff has never alleged

23   that he or anyone else has been personally subjected to a racial classification.  Thus,

24   these cases are inapplicable.

25

26   _____

          [1] The *Sanchez* court distinguished *Johnson v. California* and other cases,
27   explaining that "[w]hat those cases hold is that a law classifying individuals by race
     and then imposing some kind of burden or benefit on the basis of the classification
28   is subject to strict scrutiny even if persons of all races bear the burden or receive the
     benefit equally."  *Sanchez*, 145 Cal. App. 4th at 681.

4

## II. PLAINTIFF HAS NOT CHALLENGED THE BOUNDARIES OF THE SPECIFIC DISTRICTS IN MAP 133

Plaintiff admittedly does not challenge the City of Poway's method in drawing district lines; he instead alleges that "race infected all aspects of Map 133" asserting that the CVRA "was the sole reason *why* the City decided to draw new districts in the first place." Opp. at 22. Plaintiff insists, again quoting *Cooper*, that "[t]he Supreme Court has held that 'if racial considerations predominated over other considerations' in fashioning *an electoral system*, that system must 'withstand strict scrutiny.'" Opp. at 18 (emphasis added). But in *Cooper*, the Supreme Court held only that "if racial considerations predominated over others" in drawing district lines, "*the design of the district* must withstand strict scrutiny." *Id*. at 1464 (emphasis added). Indeed, the *Shaw* line of cases specifically addresses challenges to specific district boundaries, not broader challenges to state laws seeking to address vote dilution. *Alabama Legis. Black Caucus v. Alabama*, 135 S.Ct. 1257, 1265 (2015) ("We have consistently described a claim of racial gerrymandering as a claim that race was improperly used in the drawing of the boundaries of one or more specific electoral districts."); *see also Gill v. Whitford*, 138 S.Ct. 1916, 1930 (2018) ("Plaintiffs who complain of racial gerrymandering in their State cannot sue to invalidate the whole State's legislative districting map; such complaints must proceed 'district-by-district'").

To establish that race predominated in the drawing of district lines, a plaintiff must show that "the legislature 'subordinated' other factors—compactness, respect for political subdivisions, partisan advantage, what have you—to 'racial considerations.'" *Cooper*, 137 S.Ct. at 1464 (quoting *Miller*, 515 U.S. at 916). Plaintiff argues that race may predominate even where there is not actual conflict between traditional districting criteria and the district map ultimately chosen. Opp. at 16 (citing *Cooper*, 137 S. Ct. at 1469, n.3) (rejecting the argument that "racial considerations cannot predominate in drawing district lines unless there is an

5

1    'actual conflict' between those lines and 'traditional districting principles.'")).  That

2    may be the case where, as in *Cooper*, the mapmaker's explicit statements establish

3    that "race furnished 'the overriding reason for choosing one map over others."

4    *Cooper*, 137 S.Ct. at 1469, n.3.  But plaintiff has not made any such factual

5    allegations in this case.  A plaintiff alleging racial gerrymandering must allege facts

6    that would support the conclusion that race was, in fact, the predominant factor in

7    drawing the district lines at issue.  This can be achieved by pointing to, for

8    example, the demographic makeup of the districts, to its bizarre shape, or, as in

9    *Cooper*, explicit statements by those creating the districts that race was more

10   important than other factor in drawing the lines.  *Id*. at 1469; *see also Bethune-Hill*

11   *v. Virginia State Bd. Of Elections*, 137 S.Ct. 788 (2017) ("[T]here may be cases

12   where challengers will be able to establish racial predominance in the absence of an

13   actual conflict by presuming direct evidence of the legislative purpose and intent or

14   other compelling circumstantial evidence.")  Plaintiff has offered no factual

15   allegations of either type that would support a finding that race predominated in

16   drawing Map 133.

17        Plaintiff suggests it would be "disregard[ing] the Supreme Court's

18   interpretation of the Constitution" for this Court to decline to apply *Shaw v. Reno*'s

19   test for racial gerrymandering to his claim.  But Plaintiff has offered no reason that

20   the test for racial gerrymandering should be applied in a case that does not

21   challenge any individual district boundaries and involves no factual allegations that

22   would support a finding of racial gerrymandering in a particular district (such as an

23   allegation that race was considered in drawing the district lines at issue).  It is

24   Plaintiff that asks this Court to disregard the Supreme Court's clear instruction that

25   a racial gerrymandering claim "applies to the boundaries of individual districts."

26   *Alabama Legis. Black Caucus*, 135 S.Ct. at 1265.

27        Plaintiff cites *Alabama Legislative Black Caucus v. Alabama* for the

28   proposition that voters "can present statewide *evidence* in order to prove racial

6

gerrymandering in a particular district." Opp. at 17 (citing *Alabama Legis. Black Caucus*, 135 S.Ct. at 1265). But that is not what Plaintiff seeks to do in this case. Plaintiff does not allege that citywide evidence will demonstrate that race predominated in drawing any specific election district in the City of Poway. To the contrary, he points to no facts at all that would support that conclusion. This contrasts with the showing in *Alabama Legislative Black Caucus*, in which the Supreme Court noted that the statewide evidence presented by the plaintiffs was offered to show "that race motivated the drawing of particular lines in multiple districts in the State." *Id*. at 1267. Plaintiff seems to contend that he is not required to present *any* evidence demonstrating that his district is actually racially gerrymandered—instead he argues it is sufficient to point to the fact that his district was drawn in response to a threat of CVRA litigation. Plaintiff's language is telling; he argues that his voting district, "like every other district in Poway, is the product of a process in which race predominated over all other considerations." Opp. at 17. He does not argue, as *Shaw* and *Alabama Legislative Black Caucus* require, that race predominated in drawing the district lines themselves.

Plaintiff incorrectly argues that the CVRA requires maximization of minority voting power. The CVRA is silent on how districts are to be drawn if a political subdivision makes the move to district elections in order to comply with the CVRA. It provides only that moving to district-based elections is a potential remedy. It does not require minority-majority districts. It does not require that any group's voting power by maximized. It does not require a political subdivision to take race into account at all in drawing district lines. Any remedial districts that impermissibly used race as the predominant factor would be subject to an Equal Protection challenge. *See Sanchez*, 145 Cal. App. 4th at 688 ("There is no doubt that any district-based remedy the trial court might impose using race as a factor in drawing district lines would be subject to analysis under the *Shaw-Vera* line of cases.") Maximization of minority voting power is not an issue in this case.

### III.   THE FVRA DOES NOT DISPLACE THE STATES' AUTHORITY TO REGULATE THEIR ELECTIONS

It is beyond question that, despite the passage of the FVRA, "States retain the power to regulate their own elections." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). The Supreme Court has recognized "the importance in our federal system of each State's sovereign interest in implementing its redistricting plan." *Bush v. Vera*, 517 US. 952, 978 (1996). Plaintiff argues that the CVRA "was not drafted by concerned legislators in an effort to prevent racial discrimination" because "the Fourteenth Amendment and Section 2 already exist to address that precise issue on a nationwide basis." Opp. at 7. But § 2 did not somehow divest State legislatures of their authority to regulate their own elections.[2]

Plaintiff cites *Bartlett v. Strickland*, 556 U.S. 1, 23 (2009) for the proposition that "eliminating the compactness requirement would 'unnecessarily infuse race into virtually every redistricting, raising serious constitutional questions.'" Opp. at 4. Plaintiffs omit a crucial part of the quote from Bartlett, which in its entirety reads *"[i]f § 2 were interpreted to require crossover districts throughout the Nation, 'it would unnecessarily infuse race into virtually every redistricting, raising serious constitutional questions.'"* *Bartlett* does not stand for the proposition that the omission of the *Gingles* compactness factor in circumstances unrelated to § 2 vote dilution claims violates the Fourteenth Amendment.[3] Though *Bartlett* held

---

[2] Plaintiff has not argued that § 2 preempts the CVRA. Thus, Plaintiff's argument that "the CVRA actually prohibits conduct only where it does not duplicate the relief available under Section 2" fails. Opp. at 21. Both the CVRA and FVRA prohibit some of the same conduct; voters may decide under which statute to seek relief. In fact, Plaintiff's argument tacitly admits that the CVRA does not violate the Fourteenth Amendment where it prohibits the same conduct as § 2, thus demonstrating that the CVRA is not unconstitutional under all circumstances, as required for a facial challenge. *See City of Los Angeles v. Patel*, 135 S.Ct. 2443, 2449 (2015).

[3] Plaintiff asserts that geographic compactness is necessary to a finding of

that § 2 did not require state legislatures to draw crossover districts, it noted that "States that wish to draw crossover districts are free to do so where no other prohibition exists." *Id*. at 24. In any event, the CVRA does not require the creation of crossover districts.

## CONCLUSION

For the foregoing reasons and those stated in the Attorney General's memorandum of points and authorities in support of his motion to dismiss, the Attorney General requests that the complaint be dismissed in its entirety.

Dated:  August 31, 2018                    Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General


*/s/ Amie L. Medley*
AMIE L. MEDLEY
Deputy Attorney General
*Attorneys for Defendant Xavier Becerra, California Attorney General*

---

vote dilution in any and all circumstances, but the cases he cites all deal exclusively with vote dilution under § 2. Opp. at 19; *Bartlett v. Strickland*, 556 U.S. 1, 15 (2009) (state authorities argued "that § 2 required them to draw the district in question in a particular way."); *Growe v. Emison*, 507 U.S. 25, 40-41 (1993) (district court incorrectly held that "any legislative plan lacking a super-majority minority Senate district . . . violated § 2."); *Gomez v. City of Watsonville*, 863 F.2d 1407, 1409 (9th Cir. 1988) (appellants claimed "that the City's at-large system of mayoral and city council elections violates Section 2").

9

# CERTIFICATE OF SERVICE

Case Name:     **Higginson, Don v. Xavier**          No.     **3:17-CV-2032 WQHJLB**
               **Becerra, et al.**

I hereby certify that on <u>August 31, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT XAVIER BECERRA'S REPLY IN SUPPORT OF MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>August 31, 2018</u>, at Los Angeles, California.

Amie L. Medley                                        *Amie L. Medley*
Declarant                                                Signature