UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON HIGGINSON,<br><br>         Plaintiff,<br><br>v.<br><br>Xavier Becerra, in his official capacity as Attorney General of California; City of Poway,<br><br>         Defendants,<br><br>v.<br><br>California LULAC, Hiram Soto, Judy Ki, Jacqueline Contreras, Xavier Flores,<br><br>       Intervenor-Defendants. | Case No.: 17cv2032-WQH-MSB<br><br>**ORDER** |

HAYES, Judge:

  The matter before the Court is the Motion to Dismiss filed by Defendant Xavier Becerra. (ECF No. 103).

**I. PROCEDURAL BACKGROUND**

  On October 4, 2017, Higginson initiated this action by filing the Complaint against Defendant Xavier Becerra, Attorney General of California (the Attorney General), and Defendant the City of Poway. (ECF No. 1). Higginson brings this action pursuant to 42

1

U.S.C. §§ 1983 and 1988 for violation of his Fourteenth Amendment equal protection rights. Higginson claims that the City of Poway adopted by-district elections in order to comply with the California Voting Rights Act (CVRA), and that such elections "are the product of racial gerrymandering." *Id.* ¶ 12.

On February 23, 2018, the Court dismissed the Attorney General and the City of Poway for lack of subject matter jurisdiction on standing grounds. (ECF No. 68). The Court of Appeals reversed and remanded for further proceedings. (ECF No. 115 at 5–6). The Court of Appeals found that Higginson "adequately alleged that he resides in a racially gerrymandered district and that the City's adoption of Map 133 reduced the number of candidates for whom he can vote." *Id.* at 5. The Court of Appeals found that Higginson has standing to challenge "the City's actions, including his argument that the City violated his rights because the CVRA, with which the City sought to comply, is unconstitutional under the Equal Protection clause." *Id.* The Court of Appeals stated, "We, of course, express no view on the merits of any of Plaintiff's theories." *Id.*

On August 2, 2018, the Attorney General filed a Motion to Dismiss the Complaint "in its entirety" and "without leave to amend," on grounds that "Plaintiff has failed to allege sufficient facts to state a claim for which relief may be granted." (ECF No. 103 at 2). On August 27, 2018, Higginson filed an Opposition in response to the Motion to Dismiss. (ECF No. 111). On August 31, 2018, the Attorney General filed a Reply supporting the Motion to Dismiss. (ECF No. 118). The docket reflects that the City of Poway has made no filings with respect to the Motion to Dimiss.

## II. ALLEGATIONS OF THE COMPLAINT

Higginson alleges that "[t]he Equal Protection Clause of the Fourteenth Amendment 'prevents a State, in the absence of sufficient justification, from separating its citizens into different voting districts on the basis of race.'" (ECF No. 1 ¶ 1) (quoting *Cooper v. Harris*, 137 S. Ct. 1455, 1463 (2017) (internal quotations omitted)). Higginson alleges that Section 2 of the federal Voting Rights Act (FVRA) "has been interpreted to protect minorities against vote dilution." *Id.* ¶ 2. Higginson alleges that the Supreme Court has "emphasized"

2

17cv2032-WQH-MSB

that the FVRA "is in obvious tension with the Fourteenth Amendment, because it, by definition, makes race the predominant factor in districting decisions." *Id.* Higginson alleges that "[t]he Supreme Court issued a series of decisions, beginning with *Thornburg v. Gingles*" in order to "ensure [the FVRA] is an anti-discrimination provision, and not an unconstitutional mandate to maximize electoral power on the basis of race." *Id.* ¶ 3 (citing 478 U.S. 30 (1986)). Higginson alleges that the Supreme Court "held that an at-large voting system will violate [the FVRA] only if a minority group proves both that it can form a compact single-member district and that voting is racially polarized." *Id.*

Higginson alleges that the California legislature passed the CVRA "to override the constraints the Supreme Court has imposed in an attempt to save [the FVRA] from unconstitutionality." *Id.* ¶ 4. Higginson alleges that "[u]nder the CVRA, local governments must abandon at-large voting systems if racially polarized voting exists—regardless of whether the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district." *Id.* Higginson alleges, "Accordingly, the CVRA flagrantly violates the Fourteenth Amendment. Its 'race-based sorting of voters' does not serve a 'compelling interest' nor is it 'narrowly tailored.'" *Id.* ¶ 5 (quoting *Cooper*, 137 S. Ct. at 1464).

Higginson alleges that a 2016 CVRA amendment created a safe harbor provision, requiring potential plaintiffs to send advance notice that a political subdivision's election method may violate the CVRA. *Id.* ¶ 28. The political subdivision has 45 days to "pass a resolution outlining its intention to transition from at-large to district-based elections," in order to prevent the "prospective plaintiff from commencing an action to enforce" the CVRA. *Id.* ¶ 29 (quoting Cal. Elec. Code § 10010(e)(3)(A)).

Higginson alleges that the City of Poway has used an at-large voting system to elect its City Council for decades. *Id.* ¶ 32. "On June 7, 2017, the City received a certified letter from an attorney, Kevin Shenkman, asserting that the City's at-large system violates the CVRA." *Id.* ¶ 33. The letter stated that "Poway's at-large system dilutes the ability of Latinos (a 'protected class') to elect candidates of their choice or otherwise influence the

outcome of Poway's council elections." *Id.* ¶ 34. The letter urged Poway "to voluntarily change[] its at-large system of electing council members." *Id.* The letter "gave the City until July 21, 2017" to notify Shenkman of a voluntary change, after which Shenkman "w[ould] be forced to seek judicial relief." *Id.*

Higginson alleges that during "a closed session" on June 20, 2017, the Poway City Council discussed "the threatened CVRA litigation," and directed its "staff to prepare a resolution of intention for establishing and implementing by-district elections for . . . consideration at the July 18, 2017 City Council meeting." *Id.* ¶ 35. The City Attorney recommended "adoption of the resolution ahead of the July 18 meeting" to take advantage of the safe harbor provision because "the risks and costs associated with protracted CVRA litigation—particularly in light of results in all other cities that have fought to retain at large voting—cannot be ignored." *Id.* ¶ 36. The City Attorney stated that the "public interest may ultimately be better served by a by-district electoral system if converting to that system avoids significant attorneys' fees and cost award." *Id.*

Higginson alleges that at the July 18 meeting, an outside attorney advised the City Council that the CVRA "effectively removed burdens of proof that exist under the [FVRA]." *Id.* ¶ 37. The attorney "provided examples of prior attorney's fees awards under the CVRA." *Id.* The attorney stated that "it is virtually impossible for governmental agencies to defend against lawsuits brought under the CVRA" and "that's in fact why you see cities throughout the State converting" from at-large to by-district elections "in the face of these demand letters." *Id.*

Higginson alleges Councilmember Cunningham asked the attorney if the City of Poway's plan complied with the safe harbor provision, stating that the provision "is truly the shield . . . we are using to avoid attorney's fees, and costs, and protracted litigation." *Id.* ¶ 42. Councilmember Mullin stated,

> We've gone through denial, and we've gone through anger, and now we're into acceptance. So, to those of you in the audience who think we should be fighting this, we concur, we were there awhile back as well. I have no illusions that this will lead to better government for our city. . . . [W]e have a gun to

4

our heads and we have no choice.

*Id.* ¶ 44. Deputy Mayor Leonard stated, "I get it. I hate it but I get it. . . . We don't pick certain people in certain neighborhoods and say we'll treat them any differently. There is no evidence of that whatsoever." *Id.* ¶ 45. Mayor Vaus concluded that "we've got to do what we've got to do. And job one is to protect the treasure of our constituents. And it's their money we'd be putting at risk [with litigation] and none of us are willing to do that." *Id.* ¶ 46.

Higginson alleges that the councilmembers then "adopted Resolution No. 17-046, setting forth its intention to transition from at-large to by-district elections." *Id.* ¶ 47. The resolution stated that the City of Poway had "received a letter threatening action under the [CVRA]." *Id.* The resolution stated that the City Council had "determined that it is in the best interest of the City to move from its current at-large electoral system to a by-district election for members of the City Council, in furtherance of the purposes of the California Voting Rights Act." *Id.* ¶ 47. In August 2017, the councilmembers unanimously approved Map 133, a four-district plan. *Id.* ¶ 49. On October 3, 2017, "the Council adopted the ordinance enacting Map 133." *Id.* ¶ 51. Higginson alleges that the City of Poway "would not have switched from at-large elections to single-districts elections but for the prospect of liability under the CVRA." *Id.* ¶ 52. Higginson alleges that Attorney General, "in his official capacity," "is charged by Article V, Section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced." *Id.* ¶ 11.

Higginson requests that the Court "[d]eclare that the [CVRA] requires California political subdivisions, such as the City, to engage in racial gerrymandering in violation of the Equal Protection Clause of the Fourteenth Amendment" and "[p]ermanently enjoin Defendant Becerra from enforcing or giving any effect to the [CVRA]." (ECF No. 1 ¶ 63).

### III. CONTENTIONS OF THE PARTIES

The Attorney General contends that Higginson fails to state a claim under the Equal Protection Clause because Higginson "does not allege that he—or any other voter—has been placed in a district based on race." (ECF No. 103-1 at 6). The Attorney General contends that Higginson does not allege facts showing that race predominated in the drawing of Map 133. The Attorney General asserts that the CVRA is not subject to strict scrutiny because the statute makes no classification of voters based on their race, and does not require that political subdivisions make such classifications. (ECF No. 118 at 2). The Attorney General contends that this Court should reach the same conclusion as the court in *Sanchez v. City of Modesto*—that the CVRA complies with the Equal Protection Clause. *Id.* (citing 51 Cal. Rptr. 3d 821, 837–41 (Ct. App. 2006)).

Higginson asserts that the lines of his voting district are "tainted" because the City of Poway's decision to change from the at-large election system to a districted system was "driven by race." (ECF No. 111 at 24). Higginson asserts that the CVRA causes race to be the predominant redistricting factor, and that the City of Poway's decision to adopt districts was driven by the CVRA. Higginson asserts that the CVRA causes race to be the predominant redistricting factor because CVRA liability "turns *solely* on the existence of racially polarized voting, to the exclusion of all other factors." *Id.* at 24–25. Higginson asserts that compliance with the CVRA caused race to be the "*only* factor in the City's decision to abandon its at-large voting system in favor of by-district elections." *Id.* at 20. Higginson contends that the CVRA cannot survive strict scrutiny under the Equal Protection Clause because the CVRA provides a cause of action for vote dilution based on racially polarized voting alone, without regard to geographical compactness. *Id.* at 20–21. Higginson contends that districts drawn using predominantly racial considerations, in order to avoid FVRA vote dilution liability, fail to satisfy strict scrutiny without a showing of geographical compactness. *Id.* at 8, 25–27. Higginson contends that the ruling in *Sanchez* "is flawed and should not be followed," and that the reasoning in *Sanchez* "conflicts with binding precedent." *Id.* at 20.

## IV. APPLICABLE STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

Stating a claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A]ccepting all factual allegations in the complaint as true and drawing 'all reasonable inferences in favor of the nonmoving party,'" the plaintiff's "allegations must 'plausibly suggest an entitlement to relief.'" *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 886–87 (9th Cir. 2017) (first quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); then quoting *Iqbal*, 556 U.S. at 681). "[E]stablishing only a 'possible' entitlement to relief . . . [does] not support further proceedings." *Eclectic Props. E. v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014).

## V. SUBSTANTIVE LAW

### A. Equal Protection and Racial Gerrymandering Claims

The Equal Protection Clause of the Fourteenth Amendment "forbids 'racial gerrymandering,' that is, intentionally assigning citizens to a district on the basis of race without sufficient justification." *Abbott v. Perez*, 138 S. Ct. 2305, 2341 (2018) (quoting *Shaw v. Reno*, 509 U.S. 630, 641 (1993)); *see also Cooper v. Harris*, 137 S. Ct. 1455, 1463 (2017) ("The Equal Protection Clause . . . prevents a State, in the absence of 'sufficient justification,' from 'separating its citizens into different voting districts on the basis of

7

17cv2032-WQH-MSB

race.'") (quoting *Bethune–Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 797 (2017)); *see also Ala. Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1265 (2015) ("We have consistently described a claim of racial gerrymandering as a claim that race was improperly used in the drawing of the boundaries of one or more specific electoral districts.").

A racial gerrymandering claim requires "a two-step analysis." *Cooper*, 137 S. Ct. at 1463. First, to trigger strict scrutiny, the plaintiff has the burden to "prove that 'race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district.'" *Id.* (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)); *see also Abbott*, 138 S. Ct. at 2315 (stating that cases have assumed "a State's consideration of race in making a districting decision is narrowly tailored and thus satisfies strict scrutiny" in certain circumstances). To carry that burden, the plaintiff must demonstrate "that the legislature 'subordinated' other factors—compactness, respect for political subdivisions, partisan advantage, what have you—to 'racial considerations.'" *Cooper*, 137 S. Ct. at 1463–64. The inquiry to assess whether race "drove a district's lines"

> is satisfied when legislators have placed a significant number of voters within or without a district predominantly because of their race, regardless of their ultimate objective in taking this step. . . . [T]heir action still triggers strict scrutiny. . . . [T]he sorting of voters on the grounds of their race remains suspect even if race is meant to function as a proxy for other . . . characteristics.

*Id.* at 1473 n.7 (quotation omitted). A federal court's review "of districting legislation represents a serious intrusion on the most vital of local functions," and the first step requires the plaintiff to overcome a "presumption of legislative good faith." *Abbott*, 138 S. Ct. at 2324 (quoting *Miller*, 515 U.S. at 915).

Second, for a redistricting plan with predominantly racial considerations to survive strict scrutiny, the state has the burden "to prove that its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end." *Cooper*, 137 S. Ct. at 1464 (quoting *Bethune–Hill*, 137 S. Ct. at 800).

## B. FVRA Liability

"At the same time that the Equal Protection Clause restricts the consideration of race in the districting process," certain circumstances "may justify the consideration of race in a way that would not otherwise be allowed." *Abbott*, 138 S. Ct. at 2314–15. For example, "consideration of race in making a districting decision is narrowly tailored and thus satisfies strict scrutiny if the State has 'good reasons' for believing that its decision is necessary in order to comply with the [F]VRA." *Id.* (quoting *Cooper*, 137 S. Ct. at 1464).

An electoral district may violate the FVRA if, "under the totality of the circumstances," the lines of the district "dilute the votes of the members of [a] minority group." *Id.* at 2331. FVRA liability, whether postured as an FVRA vote dilution claim or as a defense to a racial gerrymandering claim, requires a threshold showing of the "three '*Gingles* factors': (1) a geographically compact minority population sufficient to constitute a majority in a single-member district, (2) political cohesion among the members of the minority group, and (3) bloc voting by the majority to defeat the minority's preferred candidate." *Id.* (quoting *Thornburg v. Gingles*, 478 U.S. 30, 48–51 (1986)). In *Growe v. Emison*, a unanimous Supreme Court stated:

> The "geographically compact majority" and "minority political cohesion" showings are needed to establish that the minority has the potential to elect a representative of its own choice in some single-member district. And the "minority political cohesion" and "majority bloc voting" showings are needed to establish that the challenged districting thwarts a distinctive minority vote by submerging it in a larger white voting population. Unless these points are established, there neither has been a wrong nor can be a remedy.

507 U.S. 25, 40–41 (1993) (citations omitted); *see also Bartlett v. Strickland*, 556 U.S. 1, 13, 17–10, 21 (2009) (plurality opinion) (declining to modify *Gingles* to permit FVRA vote dilution liability without geographical compactness; "avoiding serious constitutional concerns" by not "plac[ing] courts in the untenable position of predicting many political variables and tying them to race-based assumptions," or causing "a substantial increase in

the number of mandatory districts drawn with race as 'the predominant factor motivating the legislature's decision'" (quoting *Miller*, 515 U.S. at 916)).

### C. CVRA Liability

The CVRA prohibits use of "[a]n at-large method of election" to "impair[] the ability of a protected class to elect candidates of its choice or its ability to influence the outcome of an election, as a result of the dilution or the abridgment of the rights of voters who are members of a protected class."[1] Cal. Elec. Code § 14027. A CVRA violation can be "established if it is shown that racially polarized voting occurs in elections."[2] *Id.* § 14028(a). The CVRA provides that "[t]he fact that members of a protected class are not geographically compact or concentrated may not preclude a finding of racially polarized voting, or a violation of Section 14027 and this section, but may be a factor in determining an appropriate remedy." *Id.* § 14028(c). The CVRA includes a private right of action for voters in protected classes. *Id.* § 14032.

In 2016, California amended the Elections Code to require a prospective CVRA plaintiff to notify a political subdivision before filing suit—commonly known as the safe harbor provision. Cal. Elec. Code § 10010. The amendment gives the political subdivision forty-five days to "pass a resolution outlining its intention to transition from at-large to district-based elections, specific steps it will undertake to facilitate this transition, and an estimated time frame for doing so," which prohibits the prospective plaintiff from suing "within 90 days of the resolution's passage." *Id.* The prospective plaintiff "is entitled . . . to reimbursement capped at $30,000." *Id.* § 10010(f)(3).

---

[1] "'Protected class' means a class of voters who are members of a race, color, or language minority group, as this class is referenced and defined in the federal Voting Rights Act of 1965." Cal. Elec. Code § 14026.
[2] "Racially polarized voting" is defined as "voting in which there is a difference, as defined in case law regarding enforcement of the federal Voting Rights Act of 1965 (52 U.S.C. Sec. 10301 et seq.), in the choice of candidates or other electoral choices that are preferred by voters in a protected class, and in the choice of candidates and electoral choices that are preferred by voters in the rest of the electorate." Cal. Elec. Code § 14026(e).

## VI. DISCUSSION

In *Shaw v. Reno*, the Supreme Court defined racial gerrymandering claims, concluding "that a plaintiff challenging a reapportionment statute under the Equal Protection Clause may state a claim by alleging that the legislation, though race-neutral on its face, rationally cannot be understood as anything other than an effort to separate voters into different districts on the basis of race." 509 U.S. at 649. In *Miller v. Johnson*, the Supreme Court stated that "the essence of the equal protection claim recognized in *Shaw* is that the State has used race as a basis for separating voters into districts"; "that race for its own sake, and not other districting principles, was the controlling rationale in drawing its district lines," and "that race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." 515 U.S. at 911, 913, 916.

To state a racial gerrymandering claim subject to strict scrutiny under the Equal Protection Clause, a plaintiff must allege facts to support the inference that a districting decision was made "on the basis of race." *Abbott*, 138 S. Ct. at 2314. In *Shaw*, the Supreme Court characterized racial gerrymandering as a specific type of racial classification, applying the following Equal Protection principles:

> Classifications of citizens solely on the basis of race . . . threaten to stigmatize individuals by reason of *their* membership in a racial group . . . . [W]e have held that the Fourteenth Amendment requires state legislation that expressly distinguishes among citizens because of *their* race to be narrowly tailored to further a compelling governmental interest.

509 U.S. at 643 (emphasis added) (citations omitted). The appellants in *Shaw* did not claim to be members of any particular racial group. The appellants instead claimed violation of "their constitutional right to participate in a 'color-blind' electoral process"—while "wise[ly]" conceding "that race-conscious redistricting is not always unconstitutional." *Id.* at 641–42 ("This Court never has held that race-conscious state decisionmaking is impermissible in *all* circumstances."); *see also Bartlett*, 556 U.S. at 23–24 (plurality opinion) (noting that "where no other prohibition exists," states using "proper factors" may

"in the exercise of lawful discretion . . . draw crossover districts as they deemed appropriate"; recommending that states "defend against alleged [FVRA] violations by pointing to crossover voting patterns and to effective crossover districts"). The Supreme Court held that appellants stated an Equal Protection claim, specifically framed as an objection to "a reapportionment scheme so irrational on its face that it can be understood only as an effort to segregate voters into separate voting districts because of *their* race." *Shaw*, 509 U.S. at 642, 658 (emphasis added). The Supreme Court remanded, stating that "[i]f the allegation of racial gerrymandering remains uncontradicted, the District Court further must determine whether the North Carolina plan is narrowly tailored to further a compelling governmental interest." *Id.* at 658.

Racial gerrymandering claims trigger strict scrutiny under the same basic principles that trigger strict scrutiny under the Equal Protection Clause. *See id.* at 644 ("[R]edistricting legislation . . . that is unexplainable on grounds other than race . . . demands the same close scrutiny that we give other state laws that classify citizens by race.") (quotation omitted). Racial gerrymandering claims, like other Equal Protection claims, trigger strict scrutiny when a state actor has classified an individual based on that individual's membership in a racial group. In *Adarand Constructors v. Pena* the Supreme Court explained,

> [T]he Fifth and Fourteenth Amendments to the Constitution protect *persons*, not *groups*. . . . [A]ll governmental action based on race—a *group* classification long recognized as 'in most circumstances irrelevant and therefore prohibited'—should be subjected to detailed judicial inquiry to ensure that the *personal* right to equal protection of the laws has not been infringed.

515 U.S. 200, 227 (1995) (internal citation omitted). In *Parents Involved in Community Schools v. Seattle School District*, the Supreme Court stated that strict scrutiny applies pursuant to the Equal Protection Clause "when the government distributes burdens or benefits on the basis of *individual* racial classifications." 551 U.S. 701, 720 (2007) (emphasis added).

In this case, Higginson alleges that California legislators passed the CVRA to maximize minority voting strength by making it easier to sue local governments for vote dilution, "based on the existence of racially polarized voting and nothing more." (ECF No. 1 ¶ 57). Higginson alleges that the City of Poway received a letter stating that "Poway's at-large system dilutes the ability of Latinos (a 'protected class') to elect candidates of their choice or otherwise influence the outcome of Poway's council elections," and that litigation would follow unless the City "voluntarily change[d]" to districted elections. *Id.* ¶ 34. Higginson alleges that the City of Poway found it was in the City's best interest to avoid CVRA litigation and adopted an ordinance enacting the voting districts of Map 133. Higginson alleges that he was sorted into a district through the application of the CVRA. Higginson alleges that other California municipalities are exposed to the same system of potential CVRA liability that caused the City of Poway to adopt by-district elections.

Higginson's allegations do not support the inference that state actors—those who passed the CVRA, or those who implemented it through Map 133—classified Higginson into a district because of his membership in a particular racial group. Higginson does not include any factual allegations in the Complaint related to the role of his, or any other voter's, race in the application of the CVRA. Higginson does not allege facts to support the inference that the CVRA causes state action that classifies any voter according to that voter's membership in a particular racial group. *See Shaw*, 509 U.S. at 642 (recognizing racial gerrymandering claim for "[a] reapportionment plan that includes in one district individuals who belong to the same race, but who are otherwise widely separated by geographical and political boundaries, and who may have little in common with one another but the color of their skin"); *Cooper*, 137 S. Ct. at 1473 n.7 (referencing "the sorting of voters on the grounds of their race" as action that "triggers strict scrutiny"); *see also Adarand*, 515 U.S. at 227 ("[A]ll governmental action based on race—a *group* classification . . . —should be subjected to detailed judicial inquiry to ensure that the *personal* right to equal protection of the laws has not been infringed. . . . [A]ll racial

classifications, imposed by whatever federal, state, or local government actor, must be analyzed by a reviewing court under strict scrutiny.").

Higginson's allegations that the California legislature passed the CVRA "to maximize minority voting strength," (ECF No. 1 ¶ 57), do not trigger strict scrutiny absent facts showing a state actor has classified individuals based on the racial group to which those individuals belong. "[T]he good faith of the state legislature must be presumed." *See Abbott*, 138 S. Ct. at 2324 (quotation omitted). Higginson has not overcome the presumption of good faith, or demonstrated a legislative "effort to segregate the races for purposes of voting," by alleging "race-conscious state decisionmaking." *See Shaw*, 509 U.S. at 642 ("This Court never has held that race-conscious state decisionmaking is impermissible in *all* circumstances."). The Court of Appeals for the Third Circuit has stated,

> It is also error to treat " 'racial motive' as a synonym for a constitutional violation" or "racial classification." This holds true even for a decisionmaker's racially discriminatory purpose. Racially discriminatory purpose, alone, is not a racial classification because racial classification is more than a mere thought. . . . [R]acial classification occurs when an action "distributes burdens or benefits on the basis of" race . . . . [R]acially discriminatory purpose refers to the purpose or intent in selecting an action and not to whether the selected action resulted in actual discrimination or classifications.

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 548 n.37 (3d Cir. 2011) (first quoting *Raso v. Lago*, 135 F.3d 11, 16 (1st Cir. 1998) ("[A] concern with race . . . does not make such enactments or actions unlawful or automatically 'suspect' under the Equal Protection Clause."); then quoting *Seattle*, 551 U.S. at 720 (separating discussion of racial classification and racially discriminatory purpose)); *see also Chen v. City of Hous.*, 206 F.3d 502 (5th Cir. 2000) ("[T]his Court has interpreted the Supreme Court's current position to include a majority in favor of Justice O'Connor's statement in *Bush* that the intentional creation of minority-majority districts will not in and of itself trigger strict scrutiny." (citing *Bush v. Vera*, 517 U.S. 952, 958 (1996) ("Strict scrutiny does not apply merely because redistricting is performed with consciousness of race. Nor does it apply to

all cases of intentional creation of majority-minority districts.") (internal citations omitted))).

The Court finds that Higginson's allegations, accepted as true, with reasonable inferences drawn in his favor, do not state a racial gerrymandering claim subject to strict scrutiny analysis under the Equal Protection Clause. *See Gregg*, 870 F.3d at 886–87 ("[A]ccepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party, the allegations must plausibly suggest an entitlement to relief.") (quotations omitted); *Eclectic Props.*, 751 F.3d at 996–97 ("[E]stablishing only a 'possible' entitlement to relief . . . [does] not support further proceedings."). Higginson fails to state a claim under the Equal Protection Clause of the Fourteenth Amendment, and the Complaint must be dismissed. *See Shroyer*, 622 F.3d at 1041 (noting propriety of dismissal "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory").

## VII. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by the Attorney General (ECF No. 103) is GRANTED. IT IS FURTHER ORDERED that Plaintiff shall file any motions for leave to file an amended complaint, or show cause why the Complaint (ECF No. 1) should not be dismissed as to Defendant City of Poway and Intervenor-Defendants California LULAC, Hiram Soto, Judy Ki, Jacqueline Contreras, and Xavier Flores, within thirty days of the date of this Order.

Dated: February 4, 2019

Hon. William Q. Hayes
United States District Court